STATE OF NEBRASKA, APPELLEE, V. STEVEN R. GARZA, APPELLANT.

459 N.W.2d 739

Filed August 31, 1990.    No. 89-469.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Following a jury trial in district court, the defendant, Steven R. Garza, was found guilty of attempted first degree sexual assault and sentenced to 4 to 6 years in prison. He has appealed and assigned as error the trial court's refusal to instruct the jury on what Garza claims are the lesser-included offenses contained within the attempted first degree sexual assault charge and the court's overruling the defendant's motion for mistrial.

The record shows that on the night of September 20, 1988, a group of teenagers were drinking beer at Carl Ziemba's apartment. At some point during the evening, two of the girls got into a fight over Michael Garza, the defendant's cousin, who was charged with attempted first degree sexual assault. See *State v. Garza, post* p. 215, 459 N.W.2d 747 (1990). The defendant took one of the girls outside to calm her down.

The victim lived in the third story of an adjacent apartment building. The victim had been sleeping since about 4:30 that afternoon because she had been drinking wine earlier in the day, celebrating her birthday. When she woke up around 9:20 that night, she was still feeling the effects of alcohol. She went out onto her balcony to look for her cat. While on the balcony she saw the defendant and the girl arguing loudly and saw the defendant slap the girl. The victim took a paring knife and went outside to try to help the girl. The girl told her not to get involved and that everything was fine. The victim told the girl to "get away from this asshole."

The defendant hit the victim in the face, knocking her down. The victim testified that the defendant dragged her to the side of the building with the help of his cousin Michael and that the defendant told her he was going to "fuck [her] in the ass." She further testified that while the cousin held her by the elbows, the defendant pulled down her pants, pulled out her tampon, and then started to unbutton his pants, when she struggled enough to get free.

A neighbor testified that she heard a woman screaming and saw two men holding a woman with no pants on. She called the

police.

After the victim broke away, she ran back to her apartment. The police arrived shortly after that in response to the neighbor's call. The victim suffered two black eyes and lost the feeling in her face for approximately 3 months. She also had scrapes and bruises on her arms and legs.

The victim positively identified the defendant from a photo array as the man who attempted to assault her. The photo array consisted of pictures of Hispanic males, because the victim had described her attackers as Mexican. Later, when the victim was shown a photograph of Ziemba, she stated that he was not one of her assailants.

The defendant testified that he did not pull down the victim's pants and did not threaten to have sex with her. He and the girl he was arguing with in the parking lot testified that the girl dragged the victim to the side of the apartment building after the defendant hit the victim, knocking her down. The defendant further testified that he encountered the victim for a second time while he and Ziemba were standing at the corner of the building. He stated that she started hugging Ziemba, telling him that the defendant hit her. According to the defendant, he then left Ziemba with the victim and started walking toward the wall when he heard the victim yelling at Ziemba. He turned around and saw the victim standing with her pants down. He stated he tried to calm her down, and she became irate and started trying to stab him with the knife, when Ziemba grabbed her from behind. According to the defendant, he grabbed the victim's legs and took the knife away from her while Ziemba started dragging her along the side of the building. At that point the defendant left the scene.

Defendant, relying on *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989), and *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), first alleges that the trial court erred in failing to instruct the jury, as he had requested, as to what he claims are the lesser-included offenses of attempted first degree sexual assault: third degree assault, third degree sexual assault, and attempted third degree sexual assault.

In *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982), we held that it was error for the trial court to instruct the jury

that first degree assault was a lesser-included offense of attempted murder in the second degree. We recognized that although "the elements of first degree assault *may* be present in a case of attempted second degree murder, it is likewise clear that one may nevertheless be guilty of attempted second degree murder without having committed first degree assault." (Emphasis in original.) *Id.* at 359, 322 N.W.2d at 674. We then stated the following rule, which is sometimes described as the common-law or strict statutory approach: "To be a lesser included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser." *Id.* at 359, 322 N.W.2d at 675.

In the *Lovelace* case the defendant had shot the victim in the stomach. We held the facts were unimportant because under the rule adopted in that case, "we look to the elements of the crime and not to the facts of the case." *Id.* at 360, 322 N.W.2d at 675.

In the *Lovelace* case we abandoned the rule which had been followed for many years in Nebraska and which is known as the cognate theory and appears to be followed in a majority of jurisdictions. See Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445, 449 (1984). That rule is illustrated by our decision in *Alyea v. State*, 62 Neb. 143, 86 N.W. 1066 (1901), in which we relied upon the allegations in the information and the proof offered in support of the allegations in determining that assault and battery was not a lesser-included offense of assault with intent to inflict great bodily injury. Because the information in that case alleged an assault, but not a battery, the defendant could not be convicted of assault and battery. The opinion stated: "The information alleges an assault, but not a battery. If the latter had been averred in the information, the charge would have been sufficiently broad to have sustained a conviction for an assault and battery." *Id.* at 144, 86 N.W. at 1067.

While *Lovelace* changed somewhat the rule set forth in *Alyea*, our decisions since the *Lovelace* case have not followed the *Lovelace* rule. See, e.g., *Jackson, supra,* and *State v. Hoffman,* 227 Neb. 131, 416 N.W.2d 231 (1987).

In *Jackson,* the defendant was charged with attempted

sexual assault in the first degree. The evidence showed that while the defendant was visiting the victim in her apartment, he left the living room several times to use the bathroom, and after his last trip to the bathroom, he returned to the living room naked and asked the victim if he " 'could have a little.' " *Id.* at 845, 408 N.W.2d at 724. The victim told the defendant to put on his clothes and get out of her apartment. The defendant repeated his request, and after the victim refused, the defendant approached the victim and asked to touch her breasts. The victim began to fight the defendant, and the defendant was unable to touch her breasts, genital area, or any other intimate area of the victim's body. Sometime during the struggle with the victim, the defendant ejaculated on the victim's pant leg, and when the victim started screaming and ran to the door, the defendant covered her mouth, pulled her arm behind her back, and told her, " 'Shut up, or I'll kill you.' " *State v. Jackson*, 225 Neb. 843, 846, 408 N.W.2d 720, 724 (1987). After the victim quieted, the defendant apologized, put on his clothes, and left.

The defendant in *Jackson* admitted that he was naked when he asked the victim to have sex; however, he denied that he, by use of force, attempted to have sex with her and that he attempted to touch the victim's genital area or other intimate parts of the victim's body or attempted in any manner to penetrate the victim's body. The defendant also testified that he " 'might have' " ejaculated on the victim's pant leg, *id.*, and that he had grabbed the victim, covered her mouth, and dragged her to the couch. He stated it was " 'possible' " that he told the victim to " '[s]hut up, or I'll kill you.' " *Id.* at 847, 408 N.W.2d at 724.

This court held that under the circumstances in *Jackson*, where the defendant was charged with attempted sexual assault in the first degree, attempted sexual assault in the second degree was a lesser-included offense.

" ' "When some of the elements of the crime charged in the information, without the addition of any element irrelevant to the original crime charged, *may* constitute another crime or crimes, such other crime or crimes are included within the crime charged." . . .' " (Emphasis in original.) *Id.* at 855, 408 N.W.2d at 729, quoting *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543

(1986), quoting *State v. McClarity*, 180 Neb. 246, 142 N.W.2d 152 (1966).

In the *Jackson* case we applied the pre-*Lovelace* rule and held that the trial court did not err in submitting attempted second degree sexual assault as a lesser-included offense of attempted sexual assault in the first degree.

In *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989), we followed the *Jackson* case and held that the trial court had erred in failing to instruct the jury on the lesser-included offenses of attempted sexual assault in the second and third degree and reversed the judgment.

However, we also stated in *Jackson*:

> "The test for determining whether a lesser-included offense exists in this jurisdiction is that a lesser-included offense is one which is necessarily established by proof of the greater offense. To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Miller*, 215 Neb. 145, 337 N.W.2d 424 (1983); *State v. Ebert*, 212 Neb. 629, 324 N.W.2d 812 (1982); *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982)."

*Jackson, supra* at 855, 408 N.W.2d at 729, quoting *State v. White*, 217 Neb. 783, 351 N.W.2d 83 (1984).

This is the "test" which we adopted in *State v. Lovelace*, 212 Neb. 356, 360, 322 N.W.2d 673, 675 (1982), where we stated, "To determine whether one statutory offense is a lesser-included offense of the greater, we look to the elements of the crime and not to the facts of the case."

However, as shown by the quotation from *State v. McClarity, supra*, cases prior to *Lovelace* determined whether a lesser-included offense existed based on the elements of the crime as charged in the information and the evidence supporting the charge. See, e.g., *State v. Aby*, 205 Neb. 267, 287 N.W.2d 68 (1980).

While cases since the *Lovelace* decision have cited the rule of looking only to the elements specified by statute in determining the existence of lesser-included offenses, in deciding the case we have looked in some degree to the facts of the case. See, e.g.,

*State v. Jackson, supra; State v. Sutton, supra; State v. Hoffman,* 227 Neb. 131, 416 N.W.2d 231 (1987). To the extent that the quoted language from *State v. Lovelace* conflicts with the previously discussed cognate-evidence approach to lesser-included offenses, the language quoted from *State v. Lovelace* is expressly disapproved.

We also deem it appropriate to reexamine our rules concerning lesser-included offenses of attempted crimes. In *State v. Swoopes,* 223 Neb. 914, 395 N.W.2d 500 (1986), we noted that under Neb. Rev. Stat. § 28-201(1) (Reissue 1989), an actor attempts to commit a crime if he or she intentionally engages in conduct which (1) would constitute a crime if the attendant circumstances were as the actor believes them to be, or (2) under the circumstances as the actor believes them to be, would constitute a substantial step in the course of conduct intended to culminate in the commission of the crime. We then concluded that because an attempted crime could be committed without the crime that was attempted itself being committed, no offense could be a lesser-included offense of an attempted crime prosecuted under § 28-201. In *State v. Jackson,* 225 Neb. 843, 408 N.W.2d 720 (1987), we reappraised the situation and overruled *Swoopes* to the extent it indicated that an attempt to commit a sexual assault in a degree less than first degree could not be a lesser-included offense in a prosecution for an attempt to commit a sexual assault in the first degree.

In now rethinking the role of the lesser-included offense doctrine in this jurisdiction, a doctrine described as a " 'Gordian [k]not' " and " 'many-headed hydra' " " 'not without difficulty in any area of the criminal law' " and one which " 'has challenged the effective administration of criminal justice for centuries,' " Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine,* 21 Am. Crim. L. Rev. 445, 445-46 (1984), we conclude that overruling *Swoopes* was improvident. As an attempted crime may be committed in an infinite variety of ways by acts which without the requisite intent are entirely innocent, the doctrine, under the cognate theory readopted earlier, simply becomes unworkable in the context of attempted crimes. Accordingly, that portion of *State v. Jackson, supra,* which overrules *Swoopes* is now

expressly overruled.

Accordingly, the trial court did not err in refusing to instruct the jury as to any lesser-included offenses.

The defendant also contends that the trial court erred in refusing to declare a mistrial after the conduct by the prosecutor set out below.

The defendant admitted on direct examination that he had previously been convicted of a misdemeanor, "false information." On cross-examination, the following ensued:

Q. You say you were convicted of false information. You said it was in March. The incident was in March, but you were actually sentenced in, I believe, August of '88; is that correct?

A. That is correct.

Q. And false information is a charge which basically involves —

MR. STOLER [attorney for Michael Garza]: Objection, Your Honor, as to going any further.

THE COURT: Sustained.

MR. CRYNE [prosecutor]: He brought it up.

THE COURT: I don't want details of what the crime was, but if you're talking about the general information of what false information is.

Q. (Mr. Cryne) You lied to a police officer, right?

MR. SLADEK [attorney for defendant]: I would object. That's still improper impeachment. May I approach the bench.

THE COURT: Well, yes. As to what the actual charge or what the actual offense was, the objection is sustained and the jury is instructed to disregard the last question.

MR. CRYNE: Can I ask the gist of the offense?

THE COURT: You can ask what the nature, what the statute is.

Q. (Mr. Cryne) Is this a violation which involves giving information to a law enforcement officer?

MR. SLADEK: Objection. It's still improper impeachment.

THE COURT: Overruled.

Q. (Mr. Cryne) You may answer the question.

A. Yes, it is. And as far as I understand, Carl Ziemba was arrested on that same charge when he was questioned.

Q. He gave false information to his parole officer, right?

A. I do not know.

Q. The gist of the offense is giving false information to a law enforcement officer?

MR. SLADEK: Continuing objection.

THE COURT: Well, it's noted, but I will sustain the objection as to already asked and answered.

. . . .

MR. SLADEK: Your Honor, may I approach the bench, Your Honor.

THE COURT: All right.

(Bench conference, and the following was heard out of the presence of the jury:)

MR. SLADEK: Your Honor, at this time I make a motion for a mistrial, the fact that the prosecution went further than has already been asked. There's been two recent cases that came down from the supreme court stating they can go no further than ask if he's convicted of false information. That question was already asked. They went further into explaining what false information is.

THE COURT: I think the wording of the statute is false information of a police officer, is it not, or other officials? I don't have a statute in front of me.

MR. STOLER: False information to a law enforcement officer is what the statute reads.

THE COURT: That's the name of the statute, and that's what it is. All right.

MR. CRYNE: In fact, I would like to mark this and offer this as a court exhibit only in support of my objection of his motion for a mistrial.

THE COURT: Why don't we mark it and offer it so it would be Exhibit A.

(Exhibit A was marked for identification)

MR. SLADEK: Your Honor, I'm objecting that it was improper impeachment, that all that can be gone into by the prosecutor or the State of Nebraska is when convicted

of a prior felony within the last 10 years, was he convicted of a misdemeanor or involving —

MR. CRYNE: Dishonesty or false statement.

THE COURT: Which is what he did.

MR. SLADEK: Right. And I asked and answered the question. The prosecutor continued to ask and answer the question.

THE COURT: Well, they can ask the same question. The fact that you ask it doesn't preclude him from asking it.

MR. SLADEK: But they went further than asking.

THE COURT: I don't think they did. I don't think they did. I think they asked if he was convicted of this. Now, if it were a felony, I don't think they can go into the type of felony, for example, burglary, rape, robbery, whatever.

MR. STOLER: Just the number of felonies.

THE COURT: Yes. But you're talking about a crime of false information. I think that's a different ballgame. I think they're entitled to say what do you mean by false information, in other words, false information to a person in authority or whatever the statute is.

MR. CRYNE: With respect to that, the language of the statute requires that it be to a law enforcement officer or a sheriff or police officer.

THE COURT: Motion is overruled.

In attacking the credibility of a witness by cross-examination under Neb. Rev. Stat. § 27-609 (Reissue 1985) by establishing that such witness has previously committed a felony *or a crime involving dishonesty or a false statement*, the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof.

(Emphasis supplied.) (Syllabus of the court.) *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987).

In this case, the prosecutor's further inquiry as to the nature of false information after the defendant admitted his conviction of the crime was clearly improper. "Once the

defendant answers in the affirmative a question as to a prior conviction, further inquiry is not permitted." *State v. Friend*, 230 Neb. 765, 772, 433 N.W.2d 512, 517 (1988).

The purpose of Neb. Rev. Stat. § 27-609 (Reissue 1989) is to allow the prosecutor to attack the credibility of a witness. The reason the scope of the inquiry is limited is to not confuse the jury with facts of another crime or have the defendant convicted based on the fact that he has previously been convicted of another crime. See, *State v. Daugherty*, 215 Neb. 45, 337 N.W.2d 128 (1983); *State v. Gore*, 212 Neb. 287, 322 N.W.2d 438 (1982) (McCown, J., dissenting).

The error in permitting the State to cross-examine the defendant concerning his prior conviction for giving false information to a police officer requires that the judgment be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

FAHRNBRUCH, J., concurs in the result.

BOSLAUGH, J., dissenting.

I dissent from that part of the opinion which holds that the cross-examination of the defendant by the State concerning his prior conviction for giving false information to a police officer requires that the judgment be reversed.

First of all, the defendant, on direct examination, did not correctly identify the crime. It seems to me that the State should be able to correctly identify the misdemeanor of which the defendant had been convicted.

More importantly, it seems to me there was no prejudice to the defendant. The defendant has the burden to prove that the claimed error actually prejudiced him instead of creating the possibility of prejudice. *State v. Gore*, 212 Neb. 287, 322 N.W.2d 438 (1982). Although the credibility of the defendant was an important issue, there was an abundance of testimony that the jury had to disbelieve before it could find the defendant guilty. Under the circumstances of this case, the conduct of the prosecutor and the trial court's failure to declare a mistrial did not "materially influence the jury in a verdict adverse to a substantial right of the defendant." *State v. Friend*, 230 Neb. 765, 769, 433 N.W.2d 512, 515 (1988). Furthermore, the trial

court sustained the defendant's objection to the prosecutor's improper impeachment and instructed the jury to disregard the prosecutor's question of whether the defendant lied to a police officer. I would affirm the judgment.

WHITE, J., dissenting.

I agree that in our attempts to understand those amorphous crimes borrowed from the Model Penal Code, i.e., attempted crimes, we have failed to follow the rationale and logic of *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982), and its successors. We correct that situation in the majority opinion by unequivocally holding that attempt crimes have a parent, but *no* offspring.

I disagree strongly with the majority that the mature *Lovelace*, which has served us well, should now be discarded in favor of the perceived superior doctrine of the faceless "majority of courts," the "cognate" approach. I prefer to call the new approach the stream-of-consciousness lesser-included offense doctrine.

The Iowa Supreme Court, in rejecting the cognate approach, explained the theory behind it:

> Under the cognate approach, a defendant may be convicted of a lesser offense that, under the strict statutory-elements approach, is not necessarily committed in the course of committing the greater offense. The lesser offense is related and, hence, "cognate" in the sense that it has several elements in common with the greater offense but may have one or two elements not essential to the greater crime.

*State v. Jeffries*, 430 N.W.2d 728, 731 (Iowa 1988).

The Iowa court retained its use of the strict statutory-elements approach, finding among other reasons that it offers more clarity, is easier to apply, is more logical, and "better comports with the constitutional requirement for adequate notice of charges than the cognate-evidence and Model Penal Code approaches do." *Id.* at 738. The court stated that under its approach, "the charge against the defendant necessarily implies whether and which lesser-included offenses come into play. . . . With the cognate-evidence and Model Penal

Code approaches, the defendant must await the evidence before knowing what, if any, lesser-included offenses are implicated." *Id.*

The majority's adoption of the cognate approach allows the determination of lesser-included offenses based on the elements of the crime as charged in the information and the evidence supporting the charge. Looking to the complaint and the facts, one could logically conceive of the following scenario:

<u>Complaint</u>

On or about the 9th day of August, 1990, the defendant, a 17-year-old male, while operating his unregistered automobile at a time when his license was suspended, and after ingesting a quantity of marijuana and alcohol, observed the victim on the sidewalk adjacent, took a pistol from a place under the driver's seat, and intentionally, deliberately, and with malice aforethought, took aim and shot and killed the victim; all of these acts occurring within the city limits of Lincoln, Lancaster County, Nebraska.

In the application of *Lovelace* and the Nebraska statutes, the principal charge of first degree murder has as its lesser-included offenses second degree murder and manslaughter.

In the cognate approach (assuming appropriate proof), the trial court on its own motion is authorized to charge as lesser-included offenses of the crime of first degree murder the following: (1) operation of an unregistered automobile, (2) operation of a vehicle during a period of suspension or revocation of a driver's license, (3) operation of a vehicle without an operator's license, (4) possession of a controlled substance, (5) minor in possession of alcohol, and (6) carrying a concealed weapon.

By following the cognate approach, this court will allow prosecutors to list any conceivable lesser-included offense on the information, which in turn will force defendants to prepare to defend against each of those crimes. As the U.S. Supreme Court stated in adopting the statutory-elements approach at the federal level:

[T]he elements test is far more certain and predictable in its application than the inherent relationship approach. . . .

[It] permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. The objective elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.

*Schmuck v. United States*, 489 U.S. 705, 720-21, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989).

I dissent.