STATE OF NEBRASKA, APPELLEE, V. CLARENCE J. WILLIAMS, APPELLANT.

503 N.W.2d 561

Filed August 6, 1993.    No. S-91-837.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

Pursuant to verdict, the district court adjudged the defendant-appellant, Clarence J. Williams, guilty of first degree assault, in violation of Neb. Rev. Stat. § 28-308(1) (Reissue 1989). The Nebraska Court of Appeals reversed the conviction and remanded the cause for a new trial because of the district court's refusal of Williams' request that the jury be instructed on the elements of third degree assault, which he claims to be a lesser offense included within the crime of first degree assault. In the course of doing so, the Court of Appeals characterized first degree assault as a specific intent crime and second and third degree assaults as general intent crimes. Upon the petition of the plaintiff-appellee State, we granted further review and now reverse the judgment of the Court of Appeals.

While the victim, Tisha Caston, was babysitting at a girl friend's house, she was visited by her friends Shawnia Fleming and Toyce Wakefield. The two told Caston that when she finished working, they would meet her in front of a convenience store.

When Caston completed her babysitting duties, she proceeded to meet Fleming and Wakefield, who were in the parking lot of a bar across the street from the designated meetingplace. Wakefield was standing outside of a vehicle talking with Williams; Fleming was seated in the passenger side of the vehicle talking with Mark Smith, the owner of the

vehicle. Caston, who had not previously met Williams or Smith, approached her two friends and asked them if they were ready to go. They replied affirmatively, and Fleming thereupon left the vehicle and walked across the street to the convenience store. Wakefield and Caston began to leave shortly thereafter. However, Williams attempted to persuade Wakefield to "ride" and "party" with him and Smith. When Wakefield said no, Williams began coaxing Caston, who also said no. According to Caston, when she tried to walk away, Williams "started cussing [her] out" and struck her on her left temple with his fist. Although Williams denies having struck Caston at that time, security guards from the bar grabbed him and told him to leave.

Caston turned and ran across the street to a pay telephone to call her aunt for a ride. Being unable to reach her aunt, Caston telephoned 911. While she was on the telephone, Smith drove by with Williams, obscenities were exchanged, and, according to Williams, Caston threw a bottle at Smith's vehicle. In any event, while Smith remained in his vehicle, Williams got out and, despite Caston's repeated pleas of "no," struck her with a closed fist on the lower part of her left jaw.

Williams admits hitting Caston, claiming it to have been "just an impulsive reaction," but claims that he "didn't want to cause her no [sic] injury." Williams then jogged off and left with Smith in Smith's automobile.

Caston was taken by her mother to the hospital, where she remained for approximately 4 days. She had suffered two fractures to her lower jaw, injuries which the oral and maxillofacial surgeon who treated Caston found to be consistent with a blow to the jaw. The injuries required surgery and the insertion of metal plates, which resulted in the permanent scarring of Caston's chin.

We concern ourselves first with the nature of the intent required by the various assault statutes. The pertinent part of § 28-308(1) reads: "A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person." The applicable passage of Neb. Rev. Stat. § 28-309(1) (Reissue 1989) proclaims: "A person commits the offense of assault in the second degree if he or she: (a) Intentionally or knowingly causes bodily injury to

another person with a dangerous instrument; (b) Recklessly causes serious bodily injury to another person with a dangerous instrument . . . ." And the relevant portion of Neb. Rev. Stat. § 28-310(1) (Reissue 1989) provides: "A person commits the offense of assault in the third degree if he: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person . . . ."

Although we have not been cited to, nor do we find, any case in which we have directly considered the precise nature of the intent required by the first degree assault statute, cases exist in which we have addressed the issue with respect to the second degree assault statute. Most recently, in *State v. Ayres*, 236 Neb. 824, 828, 464 N.W.2d 316, 320 (1991), we wrote that the second degree assault statute "does not require that the weapon in question be used in a manner, or with the intent, to cause serious bodily injury or death." See, also, *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987). We had earlier observed that "[a]ssault with a dangerous instrument, like simple assault, is a 'general intent' crime." *State v. Duis*, 207 Neb. 851, 854, 301 N.W.2d 587, 589 (1981). Although we did not define a "simple assault," it is clear from the context in which the phrase is used that we were distinguishing assaults which do not involve the use of a dangerous weapon from those assaults which do involve such use. Thus, *Duis* implies that all assaults are general intent crimes. That is to say, the intent relates to the act which produces the injury, not to the consequences which result from the assault.

We last dealt with the matter in connection with the first degree assault statute in *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988). Therein, the defendant claimed, among other things, that there was insufficient evidence to support a finding that he had intended to inflict serious bodily injury. In rejecting that claim, we first remarked it was well settled that " ' "independent evidence of specific intent is not required. . . ." ' " *Id.* at 623, 419 N.W.2d at 162. We then commented that the intent with which ". ' "*an act* is committed . . . may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident." ' " (Emphasis supplied.) *Id.* Thus, *Costanzo* implies that the requisite intent

relates to the prohibited act, i.e., the assault, and not to the result achieved, i.e., the injury. That is to say, first degree assault is a general intent, not a specific intent, crime.

We also rejected the claim that because the defendant in the earlier case of *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989), claimed not to have intended to cause the victim serious bodily injury, the evidence was insufficient to establish guilt. However, in the course of concluding that the circumstantial evidence did indeed prove guilt, we improvidently quoted from *State v. Ristau*, 201 Neb. 784, 272 N.W.2d 274 (1978), the statement that to " 'constitute the offense of assault with intent to do great bodily injury there must be an unlawful assault, coupled with a present ability and intent to injure, but no actual battery need occur.' " 233 Neb. at 520-21, 446 N.W.2d at 219. The quotation was improvident because whereas *Swigart* arose under the present § 28-308(1), *Ristau* was decided under the predecessor statute, Neb. Rev. Stat. § 28-413 (Reissue 1975), which read: "Whoever assaults another with intent to inflict a great bodily injury shall be punished upon conviction . . . ." The two statutes differ markedly, for while under § 28-413 it was the infliction of the injury which was prohibited, under § 28-308(1) the prohibited conduct consists of the act which "causes" injury in some degree.

In that last respect, the second and third degree assault statutes are the same as the first degree assault statute. We therefore now specifically hold, as we implied in *State v. Duis*, 207 Neb. 851, 301 N.W.2d 587 (1981), that all three offenses are general, and not specific, intent crimes; that is to say, the intent required by §§ 28-308(1), 28-309(1), and 28-310(1) relates to the assault, not to the injury which results.

Having clarified that matter, we turn our attention to the question of whether the district court erred by refusing to instruct on the elements of third degree assault as a lesser-included offense of first degree assault.

In *State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990), we abandoned the statutory-elements approach for determining what constitutes lesser-included offenses and adopted instead the cognate-evidence approach which we, quoting from *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988), explained in greater

detail in *State v. Grant*, 242 Neb. 364, 372, 495 N.W.2d 253, 258 (1993):

> "Under the cognate approach, a defendant may be convicted of a lesser offense that, under the strict statutory-elements approach, is not necessarily committed in the course of committing the greater offense. The lesser offense is related and, hence, 'cognate' in the sense that it has several elements in common with the greater offense but may have one or two elements not essential to the greater crime. . . .
>
> . . . [T]he cognate-evidence method, focuses on the evidence supporting the charge rather than on the statutory elements or the accusatory pleading."

Since deciding *Garza*, we have experienced firsthand the difficulties the cognate-evidence approach presents by permitting the consideration of elements the lesser crime may not share with the higher crime and have come to better understand the wisdom of the observations of the U.S. Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 720-21, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989):

> [T]he elements tests is far more certain and predictable in its application . . . . Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. The objective elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.

Hence, we return to the statutory-elements approach and, therefore, overrule the following decisions to the extent that they rely upon and apply the cognate-evidence approach: *State v. Grant, supra*; *State v. Massa*, 242 Neb. 70, 493 N.W.2d 175 (1992); *State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991); *State v. Garza, supra*.

We readopt the rule announced in *State v. Lovelace*, 212 Neb. 356, 359, 322 N.W.2d 673, 675 (1982): " 'To be a lesser included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. . . .' " Accord, *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986). Otherwise stated, a lesser-included offense "is one which is fully embraced in the higher offense." *State v. Tamburano*, 201 Neb. 703, 705, 271 N.W.2d 472, 474 (1978).

Thus, in determining whether an offense is indeed a lesser-included one, a court initially does not look to the evidence in the particular case, but, rather, as the name of the statutory-elements rule implies, looks only to the elements of the criminal offense. *State v. Lovelace, supra*. However, once it is determined that an offense is a lesser-included one, a court must examine the evidence to determine whether it justifies an instruction on the lesser-included offense by producing a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser offense. *State v. Tamburano, supra*; *State v. McDonald*, 312 Minn. 320, 251 N.W.2d 705 (1977). Accord, *State v. Fallis*, 205 Neb. 465, 288 N.W.2d 281 (1980). Consequently, a court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

Third degree assault differs from first degree assault with respect to the injury which results and may differ with regard to the mental state with which the assault is committed. A first degree assault arises when one acting "intentionally or knowingly" causes "serious bodily injury" to another. In contrast, third degree assault arises when one acting "[i]ntentionally, knowingly, or recklessly" causes mere "bodily injury" to another. Since both first degree and third degree assault may rest upon a finding that the accused acted intentionally or knowingly, third degree assault is to that extent necessarily included within first degree assault. Moreover, since

one cannot inflict serious bodily injury without inflicting bodily injury, third degree assault is fully encompassed within first degree assault. Thus, third degree assault is a lesser-included offense of the crime charged, first degree assault, and an instruction on third degree assault would be appropriate if the evidence in this case justifies its submission.

In this connection, we look first to the evidence relating to the mental state under which Williams acted. In the context of a criminal statute, "intentionally" means willfully or purposely, and not accidentally or involuntarily. *State v. Bright*, 238 Neb. 348, 470 N.W.2d 181 (1991). While in a criminal statute the meaning of the word "knowingly" varies with the context, it commonly imports a perception of the facts requisite to make up the crime. *R. D. Lowrance, Inc. v. Peterson*, 185 Neb. 679, 178 N.W.2d 277 (1970).

The record discloses that Williams intentionally and knowingly approached and struck Caston despite her pleas that he not do so and that he then proceeded to quickly leave the scene without observing whether Caston was injured. Thus, irrespective of whether it can also be said that Williams acted recklessly, as the term is defined in Neb. Rev. Stat. § 28-109(19) (Reissue 1989), a matter we do not decide, so far as the requisite mental state is concerned, the evidence would support the existence of either first degree or third degree assault.

That brings us to the nature of the injury inflicted. "Serious bodily injury" occurs when there exists "a substantial risk of death, or . . . substantial. risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 28-109(20). "Bodily injury," on the other hand, exists when there is present "physical pain, illness, or any impairment of physical condition." § 28-109(4). Thus, there can be no serious bodily injury in the absence of a bodily injury. Caston suffered a broken jaw, requiring extensive hospitalization and resulting in permanent scarring. Consequently, for the purpose of determining whether to instruct on third degree assault as a lesser-included offense, the evidence provides no rational basis for finding that Williams' actions caused mere "bodily injury," and, for that purpose, does not produce a rational basis for a

verdict acquitting Williams of the offense charged and convicting him of the lesser offense. See *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988).

However, the presumption of innocence demands that all factual elements of the government's case be submitted to the jury. *United States v. Canales*, 744 F.2d 413 (5th Cir. 1984), *reh'g denied* 750 F.2d 69; *United States v. Manuszak*, 234 F.2d 421 (3d Cir. 1956); *People v. Figueroa*, 41 Cal. 3d 714, 715 P.2d 680, 224 Cal. Rptr. 719 (1986). Thus, the jury was free, had it so chosen, to determine that the injury was not serious and to thus acquit Williams.

The judgment of the Court of Appeals is reversed.

REVERSED.

BOSLAUGH, J., concurring in the judgment only.

I concur in only that part of the majority opinion which holds that the evidence in this case was such that there was no rational basis for the jury to convict the defendant of only the lesser offense. Thus, an instruction on a lesser-included offense was not required, and I concur in the judgment of the court for that reason.