STATE OF NEBRASKA, APPELLEE,
v. KAMIL H. AL-ZUBAIDY, APPELLANT.
570 N.W.2d 713

Filed November 21, 1997.   No. S-96-012.

Alan G. Stoler for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

PER CURIAM.

We granted appellant, Kamil H. Al-Zubaidy, a petition for further review of the affirmance of his conviction for attempted first degree murder by the Nebraska Court of Appeals. The Court of Appeals found that although attempted second degree murder is a lesser-included offense of attempted first degree murder, the evidence presented in appellant's trial did not merit such an instruction. See *State v. Al-Zubaidy*, 5 Neb. App. 327, 559 N.W.2d 774 (1997). We agree with the Court of Appeals that attempted second degree murder is a lesser-included offense of attempted first degree murder, but disagree with the Court of Appeals as to whether the evidence presented merited an instruction on attempted second degree murder. We, therefore, reverse, and remand for a new trial.

## FACTUAL BACKGROUND

On December 9, 1994, appellant's wife, Anita Al-Zubaidy, informed appellant that she was leaving him, and took the couple's infant son with her to the home of Ann Brown, a friend of appellant's wife. That evening, appellant attempted to call the Brown residence to talk to his wife but was not allowed to speak with her. Eventually appellant went to the Brown residence to talk to his wife, but appellant's wife denied him entry into the home.

James Fritts testified that on the evening of December 10, 1994, appellant came to his house looking for appellant's wife.

He told appellant he had not seen her but agreed to call the Brown residence to attempt to locate her. Fritts called the house and asked for appellant's wife, who proceeded to tell him she did not wish to talk to her husband. Fritts then hung up. Appellant then dialed a number on the telephone, but when he did not get an answer, he began crying. Fritts testified that appellant stated "he knew where Brown worked and Monday he was going to kill her." Appellant then left Fritts' home.

Fritts testified he called the Brown home to warn Brown that appellant had just left and was threatening her life. Appellant's wife testified that her brother called informing her that the appellant was at her parents' home and wished to talk to her. She testified she told her brother she wanted a divorce from appellant and did not want to talk to him. She stated appellant got on the line so she hung up because he sounded "very angry."

Appellant's wife testified that at about 10:30 that evening, appellant showed up at the Brown residence and Brown called the police. Appellant's wife testified she heard Brown "screaming into the phone, oh my God, he's coming through the back door and he's got a knife."

Appellant's wife testified she saw appellant stab Brown in the chest, shoulder, and wrist. When Brown's 18-year-old daughter, Seana, tried to pull appellant off Brown, the appellant stabbed her in the shoulder. Appellant's wife testified that at that point she saw Brown's 16-year-old son, Tierney, come from the basement and tackle appellant, holding him on the ground. A friend of Tierney's, Dan Wilson, grabbed a towel and wrested the knife from appellant by the blade. Once the knife was taken from him, appellant fled the residence while Tierney went to check on his mother. Appellant's wife's testimony as to these events was corroborated by testimony from Brown, Seana, Tierney, and Wilson.

Appellant testified he never intended to kill Brown and denied making any such threat to do so to Fritts. He testified that he had wanted to talk to Fritts that evening to ask him to stop spending so much time with his wife because he feared Fritts and his wife were having an affair. He asserted he only went to the Brown residence to deliver some of his infant's belongings to his wife.

Appellant testified he went to the front door of the Brown residence, but it was locked, so he left the belongings there and went around to the back door. When he knocked on the locked back door, he stated "a guy came from the basement," opened the door, and started yelling "here he is, here he is." Appellant testified Brown began yelling "come here and kill him, come here and kill him" and then hit him in the face with the telephone. Appellant claimed a group then came from the basement and attacked him, and that one of the males in the group stabbed him in the shoulder.

Appellant testified he grabbed a butcher knife from a kitchen table and used it to ward off his attackers as he tried to exit through the back door. He next stated that Brown grabbed him and prevented him from fleeing the house. He testified he cut her wrist in order to free himself. When Brown would not let go, he began to stab her. He stated that Seana grabbed him around the head with a pillow so he could not see and that he then stabbed Seana. He finally stated he fled through the back door and left in his car.

Appellant was charged with attempted first degree murder of Brown, use of a knife or other deadly weapon to commit attempted first degree murder against Brown, intentionally and knowingly causing bodily injury to Seana with a dangerous instrument, and use of a knife or other deadly weapon to commit the felony offense of assault in the second degree.

Following the close of testimony, a conference was held regarding jury instructions. At that conference, the following dialog occurred between defense counsel and the court:

[Defense counsel]: Based on his testimony, I'm sure that he wants me to ask for a self-defense instruction.

THE COURT: Now, am I correct in my opinion that we don't need to do any lesser included offenses?

[Defense counsel]: At least on the criminal attempt. I think the Supreme Court's made it clear that there are no lesser included offenses whenever the charge is criminal attempt.

The jury returned verdicts of guilty on all four counts: attempted first degree murder, second degree assault, and two counts of use of a weapon to commit a felony. The court sen-

tenced appellant to serve between 54 and 85 years' imprisonment, and such conviction was upheld by the Court of Appeals. See *State v. Al-Zubaidy*, 5 Neb. App. 327, 559 N.W.2d 774 (1997).

## ASSIGNMENTS OF ERROR

On appeal, appellant claims the Court of Appeals correctly determined that attempted second degree murder is a lesser-included offense of attempted first degree murder; however, he asserts the court erred in concluding that an instruction on attempted second degree murder was not warranted based on the evidence adduced at trial.

## STANDARD OF REVIEW

"A party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions." *State v. Myers*, 244 Neb. 905, 910, 510 N.W.2d 58, 64 (1994). It is the duty of the trial judge in a criminal case to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. See, e.g., *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995); *State v. Myers, supra*; *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994).

## ANALYSIS

Appellant assigns two errors: (1) The Court of Appeals should have remanded the cause to the district court for a new trial for failure to instruct the jury on the lesser-included offense of attempted second degree murder, and (2) there was evidence presented which required an instruction on the lesser-included offense of attempted second degree murder.

### HISTORY OF LESSER-INCLUDED OFFENSES IN NEBRASKA

Over the last 15 years, this court has utilized two approaches to determine the appropriateness of a lesser-included offense instruction. The cognate-evidence approach looks to the ele-

ments of the crime as defined in the statute and the evidence adduced at trial. *State v. Garza,* 236 Neb. 202, 459 N.W.2d 739 (1990). In *State v. Williams,* 243 Neb. 959, 503 N.W.2d 561 (1993), *Garza* was overruled as far as the cognate-evidence approach was concerned, and this court held that to be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time committing the lesser. This is the first step of *State v. Williams, supra.* The second step required that the evidence produce a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. In *State v. McBride,* 252 Neb. 866, 567 N.W.2d 136 (1997), we were invited to abandon the elements approach and return to the cognate-evidence approach. We declined this invitation.

Our holding in *State v. Williams, supra,* is in accord with the rule used in the federal courts, which is the statutory elements test, as set forth in *Schmuck v. United States,* 489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989). In that case the court stated:

> [T]he elements test is far more certain and predictable in its application . . . . Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. The objective elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.

489 U.S. at 720-21.

In readopting the law as outlined in *State v. Lovelace,* 212 Neb. 356, 322 N.W.2d 673 (1982), the *Williams* court stated that a court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser

offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

243 Neb. at 965, 503 N.W.2d at 566. Thus, we apply the elements test to whether there can be a lesser-included offense in attempt crimes.

### LESSER-INCLUDED OFFENSES AND ATTEMPT CRIMES

Appellant argues that the Court of Appeals was correct in its determination that attempted second degree murder is a lesser-included offense of attempted first degree murder under the first part of the test articulated by our holding in *Williams*; however, appellant claims that the court erred in not finding such an instruction justified by the evidence adduced at trial under the second part of the *Williams* test.

### *WILLIAMS* TEST PART I

To apply the first part of the *Williams* test, we must analyze the elements of both crimes at issue. The statutory elements of attempted first degree murder are a substantial step in a course of conduct intended to culminate in the commission of a purposeful, malicious, premeditated killing of another person. Neb. Rev. Stat. §§ 28-201 and 28-303 (Reissue 1995). The statutory elements of attempted second degree murder relevant to this analysis are a substantial step in a course of conduct intended to culminate in the commission of an intentional killing of another person. § 28-201 and Neb. Rev. Stat. § 28-304 (Reissue 1995).

We have previously stated that second degree murder is distinguishable from first degree murder only in the absence of the requirement of deliberation and premeditation. *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996). Clearly then, second degree murder is a lesser-included offense of first degree murder, since one cannot commit first degree murder without simultaneously committing second degree murder. See *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980) (holding that trial court erred by failing to instruct jury on both first and second degree murder where evidence supported such instruction). Both attempted first degree murder and attempted second degree murder require a substantial step in a course of conduct intended to culminate in the commission of a killing. The

attempted crimes of first and second degree murder are, therefore, identical with regard to a course of conduct intended to culminate in the commission of an intentional killing of another person to the completed crimes of first and second degree murder. Thus, just as second degree murder is a lesser-included offense of first degree murder, attempted second degree murder is a lesser-included offense of attempted first degree murder. We, therefore, agree with the decision of the Court of Appeals that the first part of the *Williams* test is satisfied and that attempted second degree murder is a lesser-included offense of attempted first degree murder.

## *WILLIAMS* TEST PART II

We now move to the second part of the *Williams* test to determine whether an instruction on attempted second degree murder as a lesser-included offense of attempted first degree murder was justified based on the evidence adduced at trial. The Court of Appeals held that based upon the argument of appellant that he committed the pertinent crimes in self-defense, there was no justification for the instruction on the lesser-included offense. The Court of Appeals reasoned:

> The evidence produced by appellant reasonably provided the jury with a rational basis to acquit him of attempted first degree murder, but the self-defense theory would also have been applicable to any instructed charge of attempted second degree murder. In other words, appellant did not present any evidence which would reasonably provide the jury with a rational basis to find that appellant intentionally and maliciously attempted to kill Brown, but did so without premeditation. As such, the instruction was not warranted by the evidence . . . .

*State v. Al-Zubaidy*, 5 Neb. App. 327, 336, 559 N.W.2d 774, 780 (1997). We disagree.

Appellant's principal evidence was his statement that he did not intend to kill Brown when he went to her residence. This statement requires that an instruction be given on the lesser-included offense of attempted second degree murder. It is possible that the jury could find that appellant went to the Brown home with no premeditation to commit murder; that he entered

the house and was struck by Brown with the telephone, as he testified; and that in retaliation, he grabbed a butcher knife and intentionally stabbed Brown. In that case, appellant has attempted the crime of second degree murder, which requires that the act be done intentionally, but without premeditation.

In *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982), we said that where murder is charged, the court is required, without request, to charge on such lesser degrees of homicide as to which the evidence is properly applicable. We hold that in this case appellant's statement that he did not intend to kill Brown negates an issue of premeditation and, therefore, requires the giving of an instruction on the lesser-included charge of attempted second degree murder.

## CONCLUSION

We hold, in accord with *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), that attempted second degree murder is a lesser-included offense of attempted first degree murder. We disagree, however, with the Court of Appeals, which affirmed the trial court's failure to instruct the jury as to the lesser-included charge of attempted second degree murder. The trial court should have so instructed, and its failure to do so was prejudicial error. We, therefore, reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

McCORMACK, J., participating on briefs.