STATE OF NEBRASKA, APPELLEE, V.
ROBERT E. WRIGHT, APPELLANT.

622 N.W. 2d 676

Filed February 23, 2001. No. S-98-1213.

Louie M. Ligouri, of Ligouri Law Office, and George B. Achola, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Robert E. Wright appealed his conviction for manslaughter to the Nebraska Court of Appeals. On appeal to the Court of Appeals, Wright made various assignments of error, including an assertion that the district court for Johnson County erred in failing to instruct the jury on motor vehicle homicide as a lesser-included offense of manslaughter. The Court of Appeals rejected Wright's assignments of error, including the claimed error with respect to the purported lesser-included offense, and affirmed his conviction. See *State v. Wright*, No. A-98-1213, 2000 WL 1207155 (Neb. App. Aug. 22, 2000) (not designated for permanent publication).

Wright petitioned this court for further review of the decision of the Court of Appeals. Although Wright assigned various errors, we granted Wright's petition limited to the issue of whether motor vehicle homicide is a lesser-included offense of manslaughter and, if so, whether the evidence in this case justified giving the lesser-included instruction. Because we conclude that motor vehicle homicide is not a lesser-included offense of manslaughter, we affirm the decision of the Court of Appeals.

## STATEMENT OF FACTS

On the evening of August 4, 1997, Jill Louise Eisenhauer was southbound on a bicycle on state Highway 50 near Tecumseh, Nebraska. At about 8:47 p.m., she was struck and killed by a southbound pickup truck occupied by Wright and his employee Lisa Stark.

On September 17, 1997, an information was filed in the district court for Johnson County charging Wright with the crime of motor vehicle homicide, pursuant to Neb. Rev. Stat. § 28-306 (Reissue 1995). The information alleged that Wright had been operating his vehicle while intoxicated, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1998). The information further alleged that Wright had previously been convicted of violating § 60-6,196, which would make the motor vehicle homicide charge a Class III felony. See § 28-306(3)(b).

On or about January 28, 1998, the information was amended to a charge of manslaughter pursuant to Neb. Rev. Stat. § 28-305 (Reissue 1995). The amended information alleged that Wright had unintentionally killed Eisenhauer while committing one or more of the following acts: (1) driving at an unreasonable speed, in violation of Neb. Rev. Stat. § 60-6,185 (Reissue 1998); (2) operating his vehicle carelessly, in violation of Neb. Rev. Stat. § 60-6,212 (Reissue 1998); (3) operating his vehicle recklessly, in violation of Neb. Rev. Stat. § 60-6,213 (Reissue 1998); (4) operating his vehicle while under the influence of alcohol, in violation of § 60-6,196; (5) driving his vehicle on the shoulder of the highway, in violation of Neb. Rev. Stat. § 60-6,142 (Reissue 1998); (6) committing third degree assault, in violation of Neb. Rev. Stat. § 28-310 (Reissue 1995); and (7) committing second degree assault, in violation of Neb. Rev. Stat. § 28-309 (Reissue 1995). Manslaughter is a Class III felony under § 28-305(2).

Wright was tried before a jury beginning on October 13, 1998. The evidence adduced at trial showed that Wright operated a business that involved cleaning exhaust hoods in restaurant kitchens. From approximately 1:30 until 3:30 p.m. on August 4, 1997, Wright and his employee Stark had cleaned the exhaust hood at T-Bird's, a restaurant and grill in Cook, Nebraska. When they finished, they each had two beers at T-

Bird's and left around 5 p.m. At around 5:30 p.m., they arrived at B & J's Family Restaurant in Syracuse, Nebraska, where each drank three or four additional beers. Jeffrey Holland, an off-duty Syracuse police officer, testified that he observed Wright at the restaurant in Syracuse and that Wright spoke in a slurred manner, discontinued speaking in the middle of sentences, and mumbled to himself while Stark was absent from their table. Wright and Stark left Syracuse at around 8 p.m.

Andrew Bossung testified at trial that he observed the truck being driven by Wright southbound on Highway 50, about 3 miles north of Tecumseh, at approximately 8:35 p.m. Bossung testified that he followed the truck for about 2½ miles, during which time it appeared to be traveling at about 60 miles per hour. According to Bossung, the truck swerved onto the shoulder of the highway three times, the last time striking Eisenhauer. The truck then veered across the centerline of the highway and returned to the right shoulder, where it overturned. Another witness, Neal Gary Tate, testified that he was northbound on Highway 50 and that as the truck approached him, it twice went onto the shoulder before leaving the road and turning over.

Wright was removed from the truck by emergency personnel and taken by ambulance to a hospital in Tecumseh. One of the emergency personnel, Mary Schropfer, testified that she smelled alcohol on Wright and that he told her he had consumed five beers. At the hospital, Wright was treated by Dr. Keith Shuey, who testified that Wright "was somewhat belligerent and . . . smelled of alcohol" and that Wright said he was the driver of the truck.

At trial, Wright requested that the jury be instructed on motor vehicle homicide as a lesser-included offense of manslaughter. Wright's requested lesser-included offense instruction was denied by the court. The jury was instructed as follows:

> The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of manslaughter are:
>
> (1) that the defendant . . . without malice, caused the death of Jill Louise Eisenhauer;
>
> (2) that the defendant did so unintentionally while he was in the commission of an unlawful act or acts;

(3) that said unlawful act or acts consisted of one or more of the following: driving too fast for conditions; or careless driving; or reckless driving; or driving under the influence of alcoholic liquor; or driving on highway shoulders; or assault in the third degree; or assault in the second degree;

(4) that he did so on or about August 4, 1997, in Johnson County, Nebraska.

If you find that the State has proved beyond a reasonable doubt all elements of manslaughter, it is your duty to find the defendant "Guilty". If however, you find the State has failed to prove any one of the elements beyond a reasonable doubt, then it is your duty to find the defendant "Not Guilty".

On October 20, 1998, the jury returned a verdict finding Wright guilty of manslaughter. On November 18, Wright was sentenced to not less than nor more than 20 years' imprisonment.

Wright appealed his conviction to the Court of Appeals, assigning various errors, including the district court's refusal of the lesser-included offense jury instruction on motor vehicle homicide. The Court of Appeals rejected all of Wright's assignments of error and affirmed his conviction for manslaughter. We granted Wright's petition to review whether the Court of Appeals erred in affirming his conviction and specifically limited our review to the issue of whether or not motor vehicle homicide is a lesser-included offense of manslaughter and, if so, whether the facts of this case justified giving the lesser-included instruction.

## ASSIGNMENT OF ERROR

Wright asserts that the Court of Appeals erred by affirming the district court's denial of the requested lesser-included offense jury instruction for motor vehicle homicide.

## STANDARDS OF REVIEW

Whether jury instructions given by a trial court are correct is a question of law. *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000). In an appeal based on a claim of erroneous jury instructions, the appellant has the burden to show that the questioned instructions were prejudicial or otherwise adversely affected a substantial right of the appellant. *Id.*

## ANALYSIS

*Proper Analysis of Lesser-Included Claims.*

The current elements approach used in Nebraska to determine the appropriateness of a lesser-included offense instruction was set forth in *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). The elements approach adopted in *Williams* replaced the prior cognate-evidence approach. The history of the two approaches was outlined in *State v. Al-Zubaidy*, 253 Neb. 357, 570 N.W.2d 713 (1997). In *Al-Zubaidy*, we noted that in *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997), we had recently declined an invitation to abandon an elements approach and return to the cognate-evidence approach. Therefore, in the current case, we apply the *Williams* elements test to determine whether motor vehicle homicide is a lesser-included offense of manslaughter.

The elements test was set forth in *Williams* as follows:

[A] court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

243 Neb. at 965, 503 N.W.2d at 566. Although stated simply in the conjunctive in *Williams*, in *Al-Zubaidy*, we characterized the *Williams* test as a two-part test in which the preferred analysis was to pose the two inquiries set forth in *Williams* in a sequential manner. In the first step, a court is to analyze the elements of both crimes at issue to determine whether the lesser offense is a lesser-included offense of the greater offense. If the lesser offense is found to be a lesser-included offense, a court thereafter goes on to the second part of the *Williams* test to determine whether an instruction on the lesser-included offense is justified based on the evidence at trial. *State v. Al-Zubaidy, supra.*

In *Al-Zubaidy*, we quoted a portion of the U.S. Supreme Court's opinion in *Schmuck v. United States*, 489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989), in which the Court stated that the elements test was the preferable analysis in that it was

" 'far more certain and predictable in its application' " because it " 'involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial.' " 253 Neb. at 362, 570 N.W.2d at 716. The Court further stated that the elements approach " 'promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.' " *Id.*, quoting *Schmuck v. United States, supra.*

In *State v. Becerra*, 253 Neb. 653, 664, 573 N.W.2d 397, 405 (1998), we stated that "[i]n determining whether an offense is a lesser-included one, a court looks initially not to the evidence in a particular case, but, rather, to the elements of the criminal offense." In order to enjoy the advantages of the elements approach noted by the U.S. Supreme Court in *Schmuck*, it is important that a court first determine under the first part of the *Williams* test whether or not a lesser offense is a lesser-included offense before going on to the second part of the test and examining the evidence in a particular case to determine whether a lesser-included offense instruction is justified by such evidence.

In its disposition of the instant case, although the Court of Appeals properly cited the elements test as controlling whether or not the district court erred in refusing to instruct the jury on motor vehicle homicide as a lesser-included offense, it failed to follow the sequential approach urged in *State v. Becerra, supra*, and *State v. Al-Zubaidy*, 253 Neb. 357, 570 N.W.2d 713 (1997). In its opinion, the Court of Appeals referred to *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986), for the proposition that motor vehicle homicide had previously been held to be a lesser-included offense of manslaughter, but noted that it was arguable that the holding in *Roth* was no longer a sound statement of Nebraska law. In this regard, we note that *Roth* was decided during a period of applicability of the elements test but relied on *State v. Kelley*, 211 Neb. 770, 320 N.W.2d 455 (1982), the latter of which held, prior to adoption of the elements test, that motor vehicle homicide was a lesser-included offense of manslaughter. The Court of Appeals determined that it was not necessary to its disposition of the instant case to determine whether or not motor

vehicle homicide was a lesser-included offense of manslaughter under the elements test because it determined that under the second part of the *Williams* test, the evidence in the instant case did not produce a rational basis for acquitting Wright of the manslaughter charge and convicting him of motor vehicle homicide. Because we conclude as set forth below that motor vehicle homicide is not a lesser-included offense of manslaughter and that the district court correctly rejected Wright's requested lesser-included instruction, we conclude that although the Court of Appeals did not follow the approach set forth under *Becerra* and *Al-Zubaidy*, it reached the correct result in affirming the district court's decision, and we affirm the Court of Appeals' decision on this basis. See, *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000); *Corcoran v. Lovercheck*, 256 Neb. 936, 594 N.W.2d 615 (1999) (upon further review from judgment of Court of Appeals, this court will not reverse judgment which we deem to be correct merely because we may disagree with reasoning employed by Court of Appeals).

### Motor Vehicle Homicide Is Not Lesser-Included Offense of Manslaughter Under Current Statutes.

Wright claims that motor vehicle homicide is a lesser-included offense of manslaughter. Applying the first part of the *Williams* test, we reject the claim as a matter of law. See *State v. Mitchell*, 244 Neb. 574, 508 N.W.2d 552 (1993). See, also, *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997).

Manslaughter is a Class III felony under § 28-305(2), and motor vehicle homicide, depending on the specific law violated, may be either a Class I misdemeanor under § 28-306(2), a Class IIIA felony under § 28-306(3)(a) or (b), or a Class III felony under § 28-306(3)(c), and, therefore, motor vehicle homicide would generally be considered the "lesser offense" and manslaughter the "greater offense." Under the relevant statutes, "[a] person commits manslaughter if he . . . causes the death of another unintentionally while in the commission of an unlawful act," § 28-305(1), whereas a person commits motor vehicle homicide if he or she "causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any

city or village ordinance," § 28-306(1). Because the unlawful act committed in manslaughter connected to the unintentional death of another may be an unlawful act which does not involve the unlawful operation of a motor vehicle, one can commit manslaughter without invariably or simultaneously committing motor vehicle homicide, and therefore, motor vehicle homicide is not a lesser-included offense of manslaughter under the current statutes.

In the instant case, the first part of the *Williams* test requires us to analyze whether one cannot commit manslaughter without simultaneously committing motor vehicle homicide. That is, the issue is whether the elements of the lesser offense of motor vehicle homicide for which an instruction is requested are such that one cannot commit the greater offense of manslaughter without simultaneously committing the lesser offense of motor vehicle homicide.

Although both crimes require that a person cause the death of another unintentionally while committing an unlawful act, motor vehicle homicide requires that the person cause such death while engaged in the unlawful operation of a motor vehicle, whereas a death deemed to be manslaughter is caused while in the commission of an unspecified "unlawful act." Under the first part of the *Williams* test, the elements of motor vehicle homicide and of manslaughter are such that one can commit the greater offense of manslaughter without simultaneously committing the lesser offense of motor vehicle homicide because one who causes the death of another unintentionally while in the commission of "an unlawful act," § 28-305(1), that does not involve the operation of a motor vehicle can commit manslaughter without simultaneously committing motor vehicle homicide. See, e.g., *State v. Capek*, 234 Neb. 214, 450 N.W.2d 212 (1990) (death deemed manslaughter caused while knowingly, intentionally, or negligently causing minor child to be placed in situation that endangered her life or to be cruelly punished); *State v. Kistenmacher*, 231 Neb. 318, 436 N.W.2d 168 (1989) (death deemed manslaughter caused while in commission of third degree assault); *State v. White*, 217 Neb. 783, 351 N.W.2d 83 (1984) (death deemed manslaughter caused while in commission of child abuse). Motor vehicle homicide, therefore, is not a

lesser-included offense of manslaughter under the first part of the *Williams* test.

We recognize, as did the Court of Appeals, that motor vehicle homicide has previously been held to be a lesser-included offense of manslaughter. See, *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986); *State v. Kelley*, 211 Neb. 770, 320 N.W.2d 455 (1982). These cases were decided during a time when this court's approach to determining the appropriateness of a lesser-included offense instruction was in a state of flux, see *State v. Al-Zubaidy*, 253 Neb. 357, 570 N.W.2d 713 (1997), and the holdings in *Roth* and *Kelley* that motor vehicle homicide is a lesser-included offense of manslaughter are hereby disapproved.

*Kelley* was decided approximately 2 months before an elements approach was adopted in *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982). In *Kelley*, the court held that motor vehicle homicide was a lesser-included offense of manslaughter. The test stated in *Kelley* was that

"[a] lesser-included offense is one, the elements of which include some, but not all, of the elements of the greater offense, i.e., the lesser is fully embraced in the greater." . . . Stated another way, a lesser-included offense is one which includes some of the elements of the crime charged without the addition of any element irrelevant to the crime charged.

(Citation omitted.) 211 Neb. at 774-75, 320 N.W.2d at 458. The court concluded in *Kelley* that because "both crimes require that the person charged cause the death of another unintentionally while in violation of the law, motor vehicle homicide is a lesser-included offense of manslaughter." 211 Neb. at 775, 320 N.W.2d at 458. The court further stated that "[m]anslaughter can be committed when someone causes the death of another unintentionally while operating a motor vehicle in violation of the law." *Id.*

In *Roth*, the court cited *Kelley* for the proposition that motor vehicle homicide was a lesser-included offense of manslaughter where death was caused by the use of a motor vehicle. The court in *Roth*, however, did not refer to the elements approach which had been adopted after *Kelley* and 4 years earlier in *Lovelace*, but merely referred to the above-quoted language from *Kelley*. We believe our conclusion that motor vehicle homicide is not a lesser-included offense of

manslaughter is compelled under the current elements test set forth in *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). To the extent *Roth* and *Kelley* hold that motor vehicle homicide is a lesser-included offense of manslaughter, they are hereby disapproved.

*Prosecutorial Discretion in Charging Either*
*Manslaughter or Motor Vehicle Homicide.*

Wright argues that if motor vehicle homicide is not a lesser-included offense of manslaughter, then the State should have been required to charge him with motor vehicle homicide rather than manslaughter. We reject this argument.

Wright notes that the specific acts for which he was charged meet the elements of both motor vehicle homicide and manslaughter. Wright claims that the motor vehicle homicide statute, § 28-306, is a specific statute which controls over the general manslaughter statute, § 28-305, and that the prosecutor must, therefore, be limited to charging motor vehicle homicide. Wright argues that deaths caused unintentionally while committing an unlawful act involving operation of a motor vehicle must be prosecuted under the specific statute dealing with motor vehicle homicide rather than the general manslaughter statute. This argument was rejected by the court in *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986), and we conclude that this portion of *Roth* remains good law.

In *Roth*, the court held that in a situation wherein a set of facts is sufficient to constitute the violation of one of several crimes, the prosecutor is free to choose under which crime he or she will seek a conviction, so long as the selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Similar to the instant case, the defendant in *Roth* argued that where death is caused by a motor vehicle, the defendant must be charged with motor vehicle homicide and may not be charged with manslaughter. We rejected this argument, noting that

> [t]here is nothing in the legislative history of either § 28-305 or § 28-306 to indicate that the Legislature intended to bring about the result urged by [the defendant], nor are the statutes repugnant to each other so as to cause

the type of conflict which requires a court to consider that a statute has been repealed by implication.

*Roth*, 222 Neb. at 122, 382 N.W.2d at 350-51.

Our holding that motor vehicle homicide is not a lesser-included offense of manslaughter and partial disapproval of *Roth* does not affect either the analysis in *Roth* of the legislative intent behind §§ 28-305 and 28-306 or the holding in *Roth* that a prosecutor is free to choose under which crime a conviction will be sought when the facts are sufficient to constitute a violation of either crime. In this regard, we recently stated that

> [w]hile it is true that under the present statutory scheme the same conduct could result in substantially different criminal penalties depending upon whether one is charged and convicted of manslaughter or motor vehicle homicide, such potential disparity exists by virtue of the unambiguous language of the statutes which define the two offenses. It is not within the province of a court to read a meaning into a statute that is not warranted by the language, or to read anything plain, direct, and unambiguous out of a statute.

*State v. Burnett*, 254 Neb. 771, 776, 579 N.W.2d 513, 517 (1998). Indeed, we noted in *Roth* that "[i]t is not uncommon for an act to constitute a violation of more than one crime, some of which may be lesser-included offenses and some of which may be separate and distinct." 222 Neb. at 122, 382 N.W.2d at 351. If there is a perceived unfairness in Nebraska law which allows a prosecutor to choose whether to seek conviction under the motor vehicle homicide statute or under the manslaughter statute in any case where death is caused by unlawful operation of a motor vehicle, the remedy lies with the Legislature to amend the statutes.

## CONCLUSION

We conclude that under the *Williams* elements test, motor vehicle homicide is not a lesser-included offense of manslaughter and that the district court was not required to give the lesser-included offense jury instruction requested by Wright. We therefore conclude that the Court of Appeals did not err in rejecting Wright's lesser-included offense argument and in affirming

Wright's conviction, and upon further review, we affirm the decision of the Court of Appeals in all respects.

AFFIRMED.