STATE OF NEBRASKA, APPELLEE, v.
DAVID A. BROUILLETTE, APPELLANT.
655 N.W.2d 876

Filed January 24, 2003.    No. S-02-014.

Dennis R. Keefe, Lancaster County Public Defender, and Matthew Graff, Senior Certified Law Student, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

David A. Brouillette was convicted in the district court for Lancaster County of two counts of manslaughter. Brouillette was sentenced to 1 to 2 years' imprisonment on the first count and 5 years' probation on the second count and was ordered to pay restitution on both counts. Brouillette appeals his convictions. We affirm.

## II. STATEMENT OF FACTS

On the morning of October 23, 1999, on U.S. Highway 77 north of Lincoln, a vehicle driven by Brouillette collided head on with another vehicle, killing the driver and passenger in the other vehicle. Highway 77 is a divided four-lane highway. At the location of the accident, Highway 77 is composed of two lanes northbound and two lanes southbound separated by a grassy median. Brouillette was driving southbound in the westernmost northbound lane when the vehicles collided.

On the night before the accident, Brouillette had gone to a bar in Lincoln where he had had a "couple" of beers. Brouillette met Angela Richards at the bar, and when the bar closed at 1 a.m., Brouillette followed Richards to a party where he drank another beer. At approximately 3 or 3:30 a.m., Brouillette and Richards left the party and drove separately to Richards' home, which was located on the east side of Highway 77 north of Lincoln. Brouillette did not consume any alcohol at Richards' home, and he left her home sometime around 5:30 a.m. In order to leave Richards' home, located to the east side of Highway 77, and go south toward Lincoln, one needed to proceed west and cross over the two northbound lanes and the median before turning left to the south into the southbound lanes.

Laura Boone testified at trial that on the morning of October 23, 1999, she was driving in the southbound lanes of Highway 77 and observed a silver Grand Am driving south in the westernmost lane of the northbound lanes of the divided highway. The driver of the silver Grand Am was later identified as Brouillette. Boone observed a near miss between Brouillette's southbound vehicle and a northbound vehicle. Boone then witnessed a collision on the northbound portion of the divided highway between Brouillette's vehicle and a red Volkswagen. The driver of the red Volkswagen, Daniel Barrett, and the passenger, Jason Reese, were killed as a result of the collision.

Certain rescue workers who came to the scene of the accident testified at trial. A volunteer for the Raymond Fire Department testified that she heard Brouillette tell medical personnel that he had consumed four or five drinks on the previous evening. However, the volunteer did not detect the odor of alcohol on Brouillette's person. Stewart Danburg, a Lancaster County sheriff's deputy, testified that he engaged Brouillette in conversation regarding how the accident happened. Brouillette told Danburg that he did not realize that he was on a four-lane divided highway and instead thought that he was driving south in the correct lane of a two-lane highway. Danburg asked Brouillette if he had consumed any alcohol, and Brouillette responded that he had been drinking the prior evening but had not had anything to drink since midnight. Danburg did not notice the odor of alcohol on Brouillette and did not ask Brouillette to perform any

field sobriety tests. Joseph Gehr, a Lancaster County sheriff's deputy who was trained in accident reconstruction, investigated the scene of the accident. Gehr testified at trial that as a result of his investigation, he determined that the silver Grand Am driven by Brouillette was southbound in the westernmost lane of the northbound lanes at the time of the collision.

Brouillette was taken by helicopter to a hospital in Lincoln. Derek Horalek, another Lancaster County sheriff's deputy, spoke with Brouillette in the emergency room. Horalek testified at trial that he detected an odor of alcohol on Brouillette but did not ask Brouillette to perform any sobriety tests. When Horalek arrived at the emergency room, a laboratory technician was preparing to take a blood sample from Brouillette for medical purposes. Horalek asked the technician to take an additional blood sample for him. Horalek told Brouillette a sample was being taken but did not ask Brouillette's permission. The laboratory technician took both samples at roughly the same time. The sample taken for medical purposes was analyzed to determine blood alcohol content. During its investigation of the present case, the State, asserting its authority under Neb. Rev. Stat. § 60-6,210 (Reissue 1998), obtained the results of the test of the blood sample taken for medical purposes from the hospital.

On January 7, 2000, the State filed an information charging Brouillette with two counts of motor vehicle homicide in violation of Neb. Rev. Stat. § 28-306 (Cum. Supp. 2000). On April 21, the State filed an amended information charging Brouillette with two counts of manslaughter in violation of Neb. Rev. Stat. § 28-305 (Reissue 1995). In each count, the State alleged that Brouillette had caused the death of one of the victims "unintentionally while in the commission of an unlawful act, to-wit: Assault in the Third Degree or Careless Driving or Reckless Driving or Driving While Under Influence of Alcohol or Liquor, or Wrong Way on a One Way."

Brouillette filed a motion to quash the amended information on the basis that it was improper for the State to allege in one count alternative unlawful acts to support a charge of manslaughter. The district court overruled Brouillette's motion to quash.

Brouillette also filed a motion to suppress certain evidence and statements. Among the evidence Brouillette sought to suppress

were his statements made to Danburg at the accident scene, his statements to Horalek in the emergency room, and the results of the tests of both the blood sample taken at Horalek's request and the blood sample taken for medical purposes. The district court sustained Brouillette's motion to suppress as to statements made to Horalek in the emergency room and as to the test results of the blood sample taken at Horalek's direction. The district court over-ruled the motion to suppress as to statements made to Danburg at the accident scene and as to the test results of the blood sample taken for medical purposes. Regarding the test results of the blood sample taken for medical purposes, the district court limited the use of such evidence to proving the underlying unlawful act of driving under the influence of alcohol and sustained the motion to suppress as to any other use of the evidence, and the jury was advised accordingly.

A jury trial was held beginning September 11, 2001. At trial, Brouillette renewed his objections to admission of his statements to Danburg and to the admission of the test results on the blood sample taken for medical purposes. The district court overruled Brouillette's objections and instructed the jury that it was to consider the blood test evidence only with regard to the allegation of the unlawful act of driving while under the influence of alcohol and not with regard to any other alleged unlawful act. A toxicologist testified regarding the blood test. The toxicologist testified that at the time the blood sample was taken, Brouillette's blood alcohol level was .091 and estimated that the level would have been approximately .106 at the time of the accident, which had occurred about an hour before the blood sample was taken.

In his defense, Brouillette made an offer of proof of certain testimony by the doctor who performed the autopsies on Barrett and Reese, the accident victims. In the offer of proof, the doctor stated that he found marijuana in the pocket of Reese, who was the passenger, and that the urine of Barrett, the driver, tested positive for marijuana and amphetamine. The State objected to Brouillette's proposed evidence on the basis of relevance. The district court sustained the State's objection and disallowed the evidence offered by Brouillette.

In the course of the trial, the State struck "Assault in the Third Degree" from the list of alternative unlawful acts alleged as the predicate for the charges of manslaughter. The district court therefore instructed the jury on the remaining alleged unlawful acts. Brouillette proposed a jury instruction that consisted of the text of Neb. Rev. Stat. § 60-6,131 (Reissue 1998), which provides rules of the road for driving on the right half of roadways. The State objected to Brouillette's proposed instruction, and the district court refused the instruction. The district court gave an instruction based on Neb. Rev. Stat. § 60-6,141(1) (Reissue 1998), which specifically provides rules of the road for driving on the right-hand roadway of divided highways.

The case was submitted to the jury on September 14, 2001, and the jury returned verdicts of guilty on both counts of manslaughter. The district court sentenced Brouillette on November 27. On the first count, the district court sentenced Brouillette to 1 to 2 years' imprisonment and ordered him to pay restitution of $7,290 to Barrett's parents. On the second count, the district court sentenced Brouillette to 5 years' probation after serving the sentence on the first count and ordered him to pay restitution of $1,207.48 to Reese's mother. Brouillette appeals.

### III. ASSIGNMENTS OF ERROR

Brouillette asserts that the district court erred in (1) failing to grant his motion to quash the amended information and allowing the State to charge alternative unlawful acts as the predicate to charges of manslaughter, (2) overruling his motion to suppress evidence of the test results of the blood sample taken for medical purposes and admitting such evidence at trial, (3) overruling his motion to suppress evidence of statements he made to Danburg at the scene of the accident and admitting such evidence at trial, (4) sustaining the State's objection and refusing to admit evidence of drugs found on Barrett and Reese, and (5) failing to give his proposed jury instruction based on § 60-6,131.

### IV. STANDARDS OF REVIEW

Regarding questions of law presented by a motion to quash, an appellate court is obligated to reach a conclusion independent

of the determinations reached by the trial court. *State v. Hynek*, 263 Neb. 310, 640 N.W.2d 1 (2002).

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002).

■ The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002).

## V. ANALYSIS

### 1. DENIAL OF MOTION TO QUASH: ALTERNATIVE UNLAWFUL ACTS TO SUPPORT MANSLAUGHTER CHARGES

In his first assignment of error, Brouillette contends that the district court erred in denying his motion to quash the amended information. Brouillette was charged with two counts of manslaughter under § 28-305, which defines manslaughter as killing another unintentionally "while in the commission of an unlawful act." The amended information sets forth predicate unlawful acts as to each count in the alternative. Brouillette asserts that Nebraska law does not allow the State to allege

alternative unlawful acts as the predicate to a single count in an information charging manslaughter. He argues that § 28-305 requires that a defendant be charged in separate counts, each based on a separate unlawful act such that the jury is required to return a separate verdict on each count. Brouillette further argues that various prior opinions of this court which tend to contradict the arguments he asserts are distinguishable.

█ The State does not agree with Brouillette's contention. The State argues that the amended information was proper under § 28-305 and that the issue raised by Brouillette is controlled by *Schluter v. State*, 153 Neb. 317, 44 N.W.2d 588 (1950), and other cases, such as *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984), and *State v. Brunzo*, 262 Neb. 598, 634 N.W.2d 767 (2001). The State notes that in *West* and *Brunzo*, this court has made clear that certain crimes are single crimes that can be proved under different theories, and that because each alternative theory is not a separate crime, the alternative theories do not require that the crime be charged as separate alternative counts. We agree with the State's analysis and reject Brouillette's argument.

*Schluter, supra,* involved a challenge to the jury instructions in a manslaughter case. In analyzing the primary issue on appeal in *Schluter*, this court observed that the State was not required to specify in the information upon what particular unlawful act a count of manslaughter was based or, if specified, to thereafter elect upon which of several alleged unlawful acts a prosecution for manslaughter was based. We stated that because the State was not required to specify the particular unlawful act, such specification in the information was mere "surplusage" which did not render the information defective. *Id.* at 324, 44 N.W.2d at 593. Brouillette attempts to distinguish *Schluter* by noting that *Schluter* was based on an earlier version of the manslaughter statute, Neb. Rev. Stat. § 28-403 (Reissue 1975), which defined "manslaughter" as killing another unintentionally "while the slayer is in the commission of *some* unlawful act," whereas the current manslaughter statute, § 28-305, defines "manslaughter" as killing another unintentionally "while in the commission of *an* unlawful act." (Emphasis supplied.) Brouillette asserts that although "some" in the old statute may be read to encompass a number of unlawful

acts, the Legislature's abandonment of the phrase "some unlawful act" in favor of "an unlawful act" exhibits an intent to define manslaughter as an unintentional death that results during the commission of a single identified unlawful act. Brouillette further argues that under the current manslaughter statute, § 28-305, each alleged unlawful predicate act supports a distinct count of manslaughter and that a proper information should allege each unlawful act as supporting a separate count of manslaughter.

*West, supra,* involved motor vehicle homicide and a challenge to the form of verdict. In *West*, the defendant was convicted of motor vehicle homicide in violation of § 28-306, which made it a crime to cause "the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska." The defendant contended on appeal that the verdict returned by the jury which did not specify the underlying "violation of the law" was unclear and ambiguous and that he was therefore entitled to a new trial. In rejecting the defendant's argument, this court noted that based on the charges in the information and the evidence presented at trial, the jury could have found that the defendant operated a motor vehicle in violation of the law in one of three ways: (1) while under the influence of alcoholic liquor, or (2) when he had more than the legal limit of alcohol in his body fluids, or (3) in a reckless manner. We recognized that each of the three acts recited above which were mentioned in the information constituted a distinct violation of the law but determined that only the single offense of motor vehicle homicide was charged against the defendant and that the offense of motor vehicle homicide was a single crime which may be committed in a number of ways. In *West*, we concluded that "[w]here one is charged with the commission of a crime which may be committed in a number of ways, a general verdict finding the defendant guilty of the crime charged is sufficient and is not ambiguous." 217 Neb. at 398, 350 N.W.2d at 519. Implicit in the reasoning in *West* is the acknowledgment that the information charging the single offense of motor vehicle homicide was not improper.

In *State v. Brunzo*, 262 Neb. 598, 634 N.W.2d 767 (2001), the defendant had been convicted of first degree murder in violation of Neb. Rev. Stat. § 28-303 (Reissue 1989). In a motion for postconviction relief, the defendant alleged that the information charging him was legally defective and that his counsel was ineffective for having failed to move to quash the information. The district court denied postconviction relief, and we affirmed. The information charging Brunzo with first degree murder recited the language of § 28-303 and specified the felonies of robbery, kidnapping, and/or criminal attempt as the basis for felony murder. The information did not set out the elements of the underlying felonies. We concluded that the information charging the defendant gave him "fair notice of the charges he would face and the crime he was later convicted of." 262 Neb. at 606, 634 N.W.2d at 774. The crime of first degree murder under § 28-303 constitutes one offense even though there may be alternative theories by which criminal liability for first degree murder may be charged and prosecuted. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998). One such theory is felony murder. *Id.* The felony which serves as the predicate for felony murder in turn may be based on allegations of alternative facts. Explicit in *Brunzo* is the approval of the information charging the single offense of first degree murder under the theory of felony murder, where the predicate felonies are alleged in the alternative.

The logic of *Schluter v. State*, 153 Neb. 317, 44 N.W.2d 588 (1950); *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984); and *Brunzo, supra*, applies to the instant case. In this regard, we conclude that the change in the language of the statutory definition of "manslaughter" from "some unlawful act" to "an unlawful act" did not vitiate the holding in *Schluter*. We further observe that manslaughter under § 28-305, similar to the crime of motor vehicle homicide in *West*, is a single crime which may be committed in a number of ways. Finally, as in *Brunzo*, the information in the present case which pled the predicate acts in the alternative gave Brouillette "fair notice of the charges he would face and the crime[s] he was later convicted of," see 262 Neb. at 606, 634 N.W.2d at 774, and was not defective. The district court therefore did not err in overruling Brouillette's motion to quash

the information, and we reject Brouillette's first assignment of error.

## 2. DENIAL OF MOTIONS TO SUPPRESS EVIDENCE

In his second assignment of error, Brouillette asserts that the district court erred in denying his motion to suppress and in admitting at trial evidence of the test results from the blood sample that was taken for medical purposes. We note that the blood sample taken at Horalek's direction, having been suppressed, is not at issue on appeal. In his third assignment of error, Brouillette asserts that the district court erred in denying his motion to suppress and in admitting at trial evidence of statements that he made to Danburg at the accident scene. We analyze these two assignments of error separately.

### (a) Admission of Results of Blood Test

With respect to the admission of the results from the blood sample taken for medical purposes, Brouillette argues that the evidence was not admissible pursuant to § 60-6,210 because that statute allows for admission of such evidence only in a criminal prosecution for driving under the influence under Neb. Rev. Stat. § 60-6,196 (Supp. 1999). Section 60-6,210(1) generally provides that the test results of a blood sample taken for medical purposes "shall be admissible in a criminal prosecution under section 60-6,196 [driving under the influence] to show the alcoholic content of or the presence of drugs or both in the blood at the time of the accident." Brouillette argues that § 60-6,210 does not provide for the use of such evidence in a criminal prosecution for manslaughter under § 28-305, such as in the present case. The State argues in response that the evidence is admissible under § 60-6,210 in a prosecution for manslaughter in order to prove the underlying unlawful act of driving under the influence, which is a violation of § 60-6,196. We reject the State's analysis of § 60-6,210(1).

The substance of § 60-6,210(1) relates to the admission of the results of "a chemical" test where the sample has been obtained for the purpose of medical treatment. The blood test results at issue on the appeal of this case were obtained from a sample taken for medical purposes. The terms of § 60-6,210(1) provide for the admissibility of such test results "in a criminal

prosecution under section 60-6,196 [driving under the influence] to show the alcoholic content of or the presence of drugs or both in blood." The plain language of § 60-6,210(1) limits the use of the test results obtained for medical purposes to a prosecution for driving under the influence. The legal principle of expressio unius est exclusio alterius recognizes the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute. See, *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000). Pursuant to the statute and this principle, the admission of the evidence of the blood test results in the instant criminal prosecution for manslaughter under § 28-305 was not authorized under § 60-6,210 and was error.

An erroneous admission of evidence is considered prejudicial to a criminal defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001).

In the present case, the State alleged that Brouillette caused the death of another unintentionally while in the commission of any one or more of the unlawful acts of driving under the influence, careless driving, reckless driving, or driving in the wrong direction. Guilt of manslaughter must be supported by an underlying unlawful predicate act. The jury need find but one predicate act established by the evidence. While the trial court limited the use of the blood test result and instructed the jury to limit its use, the undisputed evidence established that Brouillette was driving in the wrong direction. Therefore, we conclude that the verdict was surely unattributable to the erroneous admission of the blood test.

The testimony of the witness Boone and of the accident reconstructionist, Gehr, established without contradiction that Brouillette was driving southbound in the northbound lanes of the divided Highway 77. Although Brouillette stated he was unaware that he was proceeding in the wrong direction, he does not dispute the fact that he was driving southbound in the northbound lane. The evidence clearly supports a finding that Brouillette was committing the unlawful predicate act of driving in the wrong direction by proceeding south in the northbound lanes of a divided highway. There was no evidence upon which the jury could have found that Brouillette was not driving in the wrong direction.

In view of the record and facts of this case, we conclude that the guilty verdict rendered in this trial was surely unattributable to the erroneous admission of the blood test. See *Trotter, supra.* We therefore conclude that the error in admitting the blood test evidence was harmless error.

### (b) Admission of Statements at Accident Scene

With respect to the admission of Brouillette's statements made to Danburg at the accident scene, Brouillette argues such evidence was obtained in violation of his constitutional rights because he was in custody and was subjected to interrogation without first being advised of his *Miranda* rights. Among the statements Brouillette made to Danburg was an admission that he had been drinking the night before the accident. The State argues in response that Brouillette was not yet in custody at the time he made the statements. We agree with the State.

It is well settled that *Miranda* warnings are required only where there has been such a restriction on one's freedom as to render one "in custody." One is in custody for *Miranda* purposes when there is a formal arrest or a restraint on one's freedom of movement of the degree associated with such an arrest. *State v. Burdette,* 259 Neb. 679, 611 N.W.2d 615 (2000). Brouillette was not in custody when Danburg questioned him at the accident scene. See *State v. Melton,* 239 Neb. 506, 476 N.W.2d 842 (1991) (defendant was not in custody when he was not under formal arrest and was questioned by officers during routine course of accident investigation). Brouillette's second and third assignments of error are without merit.

### 3. EXCLUSION OF EVIDENCE OF DRUGS
### ON BARRETT AND REESE

In his fourth assignment of error, Brouillette asserts that the district court erred in refusing to admit evidence he offered to establish that marijuana was found in the pocket of Reese, the passenger, and that marijuana and amphetamine were found in the urine of Barrett, the driver. Citing to various cases not repeated here, Brouillette argues that the excluded evidence would show that Barrett was driving under the influence of drugs and that the excluded evidence was relevant to establish that Barrett was negligent and that such negligence contributed to the accident. The State objected to such evidence on the basis of relevance, and the district court sustained the State's objection. The district court did not abuse its discretion in so ruling.

Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). If evidence fails to alter the probabilities of the existence or nonexistence of a fact in issue, the evidence is irrelevant. *Id.* The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *Id.*

The uncontradicted evidence in the present case established that Brouillette was driving in the wrong direction and that proceeding in such a manner caused the accident. Given the evidence, it was not an abuse of discretion for the district court to conclude that the proffered evidence that Reese had drugs on his person and that Barrett had drugs in his urine was not relevant. The proposed evidence does not negate evidence that Brouillette's actions caused the deaths of Barrett and Reese. The presence of drugs on Barrett and Reese could not be the sole proximate cause of the accident where the record establishes without dispute that Brouillette was driving in the wrong direction on the divided highway. See *State v. Brown*, 258 Neb. 330, 603 N.W.2d 419 (1999).

We conclude that the district court did not abuse its discretion by excluding the evidence offered by Brouillette on the basis of

relevance. We therefore reject Brouillette's fourth assignment of error.

### 4. REFUSAL OF JURY INSTRUCTION
### BASED ON § 60-6,131

In his final assignment of error, Brouillette asserts that the district court erred in refusing his proposed instruction based on § 60-6,131. The statute and the proposed instruction read:

(1) Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

(a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(b) When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

(c) Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or

(d) Upon a roadway restricted to one-way traffic.

(2) Upon all roadways, any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

(3) Upon any roadway having four or more lanes for moving traffic and providing for two-way movement of traffic, no vehicle shall be driven to the left of the centerline of the roadway except when authorized by official traffic control devices designating certain lanes to the left side of the center of the roadway for use by traffic not otherwise permitted to use such lanes or except as permitted under subdivision (1)(b) of this section. This subsection

shall not be construed to prohibit the crossing of the centerline in making a left turn into or from an alley, private road, or driveway unless such movement is otherwise prohibited by signs.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). Brouillette argues that an instruction based on § 60-6,131 was warranted by the evidence in this case because, he asserts, the evidence establishes that Barrett was driving in the left or westernmost lane of the northbound lanes of divided Highway 77 in violation of § 60-6,131(3). Although the evidence establishes that Barrett was driving in the left or westernmost lane of the northbound lanes, driving in such a manner is not a violation of § 60-6,131(3), and therefore the rule of the road enunciated in § 60-6,131(3) has no application to this case.

The evidence established that Highway 77 at the site of the collision was a four-lane divided highway. Section 60-6,141, rather than § 60-6,131, was applicable to the highway at the site of the accident and to the issues in the present case. Section 60-6,141(1) states, "Whenever any highway has been divided into two or more roadways by a median, a driver shall drive only upon the right-hand roadway unless directed or permitted to use another roadway by traffic control devices or competent authority." The jury was given an instruction based on § 60-6,141(1).

Because Brouillette's proposed instruction was not warranted by the evidence, the district court did not err in refusing to give the proposed instruction. We therefore reject Brouillette's final assignment of error.

## VI. CONCLUSION

We conclude that the amended information in the present case was not defective in listing alternative unlawful acts to support manslaughter charges and that the district court therefore did not err in denying Brouillette's motion to quash the information. We conclude that admission of evidence of the test results of the

blood sample taken for medical purposes was harmless error. We conclude that admission of evidence of Brouillette's statements to Danburg was not error. We further conclude that the district court did not err in sustaining the State's relevance objection to Brouillette's evidence of drugs found on Barrett and Reese and that the district court did not err in refusing Brouillette's proposed instruction based on § 60-6,131. Having rejected each of Brouillette's assignments of error, we affirm.

AFFIRMED.

STEPHAN, J., concurring.

In my opinion, the results of the blood test would have been admissible under Neb. Rev. Stat. § 60-6,210(1) (Reissue 1998) if Brouillette had been tried for felony motor vehicle homicide as defined in Neb. Rev. Stat. § 28-306(3)(b) or (c) (Cum. Supp. 2000), because both of those sections require proof of the operation of a motor vehicle in violation of Neb. Rev. Stat. § 60-6,196 (Supp. 1999). However, because the State amended the charges from motor vehicle homicide to manslaughter, which does not specifically require proof of violation of § 60-6,196, I agree with the majority that the blood tests were not admissible under § 60-6,210(1).

The amendment of the charges prior to trial also affects the harmless error analysis. In *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986), *disapproved on other grounds, State v. Wright*, 261 Neb. 277, 622 N.W.2d 676 (2001), this court held that where death results from the unlawful operation of a motor vehicle, a prosecutor has discretion to charge the operator with either motor vehicle homicide in violation of § 28-306 or manslaughter in violation of Neb. Rev. Stat. § 28-305 (Reissue 1995). The harmless error analysis in this case demonstrates the breadth of that discretion.

As the majority notes, there was undisputed evidence that Brouillette was proceeding south in the northbound lanes of a divided highway at the time of the fatal accident. This was a violation of the Nebraska Rules of the Road, specifically Neb. Rev. Stat. § 60-6,141(1) (Reissue 1998). In the absence of a fatality, this conduct would have constituted a "traffic infraction" punishable by a fine. Neb. Rev. Stat. §§ 60-672, 60-682, and 60-689 (Reissue 1998).

But, tragically, fatalities did result from Brouillette's traffic infraction. Had he been tried under the motor vehicle homicide statute, as originally charged, proof that he violated § 60-6,141(1) could have supported only the conviction of two Class I misdemeanors, each punishable by not more than 1 year's imprisonment, a $1,000 fine, or both. Neb. Rev. Stat. §§ 28-106 (Cum. Supp. 2000) and 28-306(1) and (2). Motor vehicle homicide is a Class I misdemeanor unless it results from reckless driving, willful reckless driving, or first-offense driving under the influence, in which case it is a Class IIIA felony punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2002); § 28-306(3)(a) and (b). If death results from a second or subsequent offense of driving under the influence, motor vehicle homicide constitutes a Class III felony punishable by 20 years' imprisonment, a $25,000 fine, or both. §§ 28-105 and 28-306(3)(c). Thus, the Legislature designed the offense of motor vehicle homicide to increase in severity from a Class I misdemeanor to a Class III felony, depending upon the seriousness of the predicate offense involving the operation of a motor vehicle. But manslaughter, a Class III felony, can be established by proof that the defendant, acting without malice, "causes the death of another unintentionally while in the commission of an unlawful act." § 28-305. Brouillette's traffic infraction, driving the wrong way on a divided highway, was unquestionably an "unlawful act," even if it resulted from an error as to the nature of the roadway, as he contended. While it would not be sufficient to support a charge of felony motor vehicle homicide, it is sufficient to support a charge of manslaughter.

This seems anomalous. If the Legislature intended to make motor vehicle homicide a felony only in the circumstance where death results from what are arguably the three most serious offenses involving the operation of a motor vehicle, why would a less serious traffic infraction resulting in death be sufficient to establish manslaughter, a felony equivalent in degree to the most serious variant of felony motor vehicle homicide? We need not and indeed cannot answer this question, because regardless of whether predicating manslaughter on a traffic infraction seems logical or just, it is permissible under current law. If the language of a statute is clear, the words of such statute are the end of any

judicial inquiry. *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364 (2001). Generally, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000). In the nearly 17 years since *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986), was decided, the Legislature has not amended § 28-305 to exclude traffic infractions from the universe of "unlawful acts" which can be the basis of a manslaughter conviction. Moreover, the Legislature repealed former Neb. Rev. Stat. § 39-669.20 (Reissue 1984), which this court applied in *Roth* to impose a limitation on the permissible sentence for manslaughter resulting from the operation of a motor vehicle. 1986 Neb. Laws, L.B. 153; *State v. Roth, supra.* Accordingly, the majority's harmless error analysis is a correct application of the law, in which I must concur.

WRIGHT and GERRARD, JJ., join in this concurrence.