IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. EATON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MONTY R. EATON, APPELLANT.

Filed August 11, 2020.    No. A-19-796.

Appeal from the District Court for Nemaha County: JULIE D. SMITH, Judge. Affirmed.

Stuart J. Dornan and Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Monty R. Eaton was convicted by a jury of manslaughter and operating a motor vehicle while under the influence with underage passengers. Eaton argues there was insufficient evidence to support his convictions, the sentences imposed were excessive, and his trial counsel was ineffective. We affirm his convictions and sentences.

## STATEMENT OF FACTS

On February 3, 2018, at approximately 8 p.m., three vehicles were traveling northbound on a highway in Nemaha County, Nebraska. The first vehicle was driven by Eaton who was with his family, including two children under the age of 16 years. The second vehicle was driven by Marilyn Schneider. The third vehicle was driven by Heather Spurlin. Schneider estimated that Eaton's vehicle was traveling at 20 miles per hour which was much slower than the speed limit.

- 1 -

Unaware she was in a no passing zone, Spurlin attempted to pass both vehicles. As Spurlin's vehicle was next to Eaton's vehicle, Eaton turned on his left turn signal and immediately turned left colliding with Spurlin's vehicle. The collision caused Spurlin's passengers, who were not wearing seatbelts, to be ejected from her vehicle, resulting in the death of one passenger.

Eaton was charged with one count of manslaughter, a Class IIA felony. In connection therewith, the amended information alleged Eaton unintentionally caused the death of an individual while in the commission of one or more of the following unlawful acts: (1) driving his vehicle carelessly or without due caution so as to endanger a person or property in violation of Neb. Rev. Stat. § 60-6,212 (Reissue 2010); (2) driving his vehicle in a manner indicating an indifferent or wanton disregard for the safety of persons or property in violation of Neb. Rev. Stat. § 60-6,213 (Reissue 2010); (3) turning his vehicle left on a roadway when such movement could not be made safely in violation of Neb. Rev. Stat. § 60-6,161 (Reissue 2010); (4) turning his vehicle left upon a roadway without giving an appropriate signal in violation of Neb. Rev. Stat. §§ 60-6,162 and 60-6,163 (Reissue 2010) or continuously during not less than the last one hundred feet traveled by the vehicle before turning in violation of § 60-6,161; (5) driving his vehicle at a slow speed impeding normal and reasonable movement of traffic in violation of Neb. Rev. Stat. § 60-6,193 (Cum. Supp. 2018); or (6) operating his vehicle with a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of his breath, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). See Neb. Rev. Stat. § 28-305 (Reissue 2016). Eaton was also charged with two counts of operating a motor vehicle while under the influence with underage passengers, Class I misdemeanors. See Neb. Rev. Stat. § 28-1254 (Reissue 2016). A jury trial was held in May 2019.

Trooper Clint Zost, the responding trooper, testified that upon arriving at the scene around 8:24 p.m., he learned Eaton was the driver of one of the vehicles involved in the accident. Zost believed Eaton was under the influence of alcohol because he observed that Eaton's breath smelled like alcohol and his eyes were bloodshot and watery. Zost further testified that when he asked Eaton if he had consumed alcohol, Eaton responded he had one 25-ounce beer followed by four or five more beers between the hours of 3:45 and 7 p.m. There were approximately 10 beer cans in Eaton's vehicle and 75 percent of them were open.

Approximately 10 minutes after arriving on the scene, Zost performed a horizontal gaze nystagmus test on Eaton. Zost testified that Eaton showed nystagmus on all six clues of impairment. Zost testified that a person who has consumed alcohol will exhibit nystagmus in some, if not all, of the six clues, while a person who has not consumed alcohol would exhibit none. Zost further elaborated that a person exhibiting nystagmus on all six clues of impairment indicates the person is under the influence of alcohol to such a degree that the person is operating a vehicle while impaired.

After arresting Eaton, Zost transported Eaton to the Nemaha County Law Enforcement Center where he performed a breath alcohol content (BAC) test on Eaton at 9:17 p.m. using a DataMaster machine. In connection therewith, Zost testified that he is a trained DUI investigator and is certified to perform DataMaster tests. Zost testified that the BAC test results indicated that Eaton had a breath alcohol content of 0.101. Zost testified that in his opinion, Eaton was under the influence of alcohol while operating his motor vehicle in February 2018.

The jury convicted Eaton on all three charges. Regarding manslaughter, the district court sentenced Eaton to 6 to 10 years' imprisonment with credit for 4 days served. For the Class I

misdemeanors, Eaton was sentenced to 0 to 90 days on each count and the district court revoked Eaton's license for 1 year and ordered him not to drive for 45 days in connection with each count. The sentences were ordered to run consecutively. Eaton has timely appealed to this court and is represented by counsel different from counsel who represented him during his trial and sentencing.

## ASSIGNMENTS OF ERROR

On appeal, Eaton contends there was insufficient evidence to support his convictions and that the district court abused its discretion in sentencing him.

Eaton also assigns as error that he "received ineffective assistance of counsel." Brief for appellant at 3. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). This assigned error is a general allegation and clearly lacks the specificity required by *Mrza.* Accordingly, Eaton has failed to raise an ineffective assistance claim on direct appeal.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

## ANALYSIS

### INSUFFICIENCY OF EVIDENCE

Eaton first assigns that the State failed to offer evidence beyond a reasonable doubt to convict him on all three charges. Specifically, Eaton argues that the evidence failed to establish that he had a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of breath at the time of the accident because the test result obtained after the accident was not sufficiently related back to the time of the accident. Additionally, Eaton argues the evidence failed to establish he drove a vehicle in a manner as to indicate an indifferent or wanton disregard for the safety of persons or property.

Eaton's argument is better understood when analyzed in relation to the jury instructions issued by the district court. In connection with the State's manslaughter charge, jury instruction number 7 set forth, in pertinent part:

> The elements of Manslaughter as charged in the Amended Information are that:
> 1. On or about the 3rd day of February, 2018,

2. In Nemaha County, Nebraska,

3. Defendant Monty R. Eaton, then and there did,

4. Cause the death of another, namely Travis E. Ries,

5. Unintentionally while in the commission of one or more unlawful acts:

a. Did drive a motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property; or

b. Did operate or be in the actual physical control of a motor vehicle when he had a concentration of eight-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath.

In connection with the State's charge of operation of a vehicle while under the influence with an underage passenger, jury instruction number 12 set forth, in pertinent part:

The elements of Motor Vehicle Operation While Under the Influence with [an] Underage Passenger as charged in the Amended Information are that:

1. On or about the 3rd day of February, 2018,

2. In Nemaha County, Nebraska,

3. The defendant, Monty R. Eaton,

4. Did then and there operate or be in the actual physical control of a motor vehicle,

5. With a person under the age of sixteen years as a passenger, namely Wyatt Eaton,

6. When the defendant had a concentration of eight-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath.

As to that portion of the manslaughter instruction in which the State was required to prove that Eaton operated a motor vehicle while over the legal alcohol limit, Eaton argues:

The result of the DataMaster test was that Eaton's breath had .101 grams of alcohol per 210 liters of his breath at 9:17 p.m. or 9:18 p.m. Zost approximated that the .101 result was anywhere from 40 minutes to an hour after the accident. Zost could not testify to what Eaton's BAC was at the time of the accident. Zost attempted to interject inadmissible preliminary breath test evidence when initially asked if he could testify to Eaton's BAC at the time of the accident. There was not sufficient evidence offered to establish what Eaton's BAC was at the time of the accident or any evidence to establish how the observations by any of the witnesses would support an inference or be considered circumstantial evidence that Eaton was above .08 at the time of the accident. As a result, his conviction for Manslaughter should be reversed.

(Citations omitted.) Brief for appellant at 16. Eaton makes the same argument in relation to that portion of the instruction governing the State's charge that he operated a vehicle while under the influence with underage passengers.

Contrary to Eaton's assertion that the State was required to offer evidence of a temporal nexus between the BAC test conducted between 40 minutes and 1 hour after the accident and the time of the accident, the Nebraska Supreme Court specifically rejected that assertion in *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010). In *Dinslage*, the defendant was charged with driving under the influence of alcohol in violation of § 60-6,196 and that the concentration of

alcohol in her breath was sufficient to make her offense punishable under Neb Rev. Stat. § 60-6,197.03(6) (Cum. Supp. 2018). Dinslage argued that because of the significant amount of alcohol she consumed at "last call" at the bar before driving, the intoxilyzer test results obtained approximately 50 minutes after her stop which placed her over the legal limit did not establish that she was operating her vehicle with a breath alcohol concentration beyond the legal limit at the time of her stop. In response, the Nebraska Supreme Court held:

> In *State v. Kubik*, [235 Neb. 612, 456 N.W.2d 487 (1990),] we explained that the State is not required to prove a temporal nexus between the test and the defendant's alcohol level at the moment he or she was operating the vehicle. It would be an impossible burden on the State to conduct such an extrapolation when its accuracy depends on the defendant's willingness to testify and his or her honesty in reporting all relevant factors, including the time and quantity of consumption. Thus, matters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than to the admissibility of the evidence. And a valid breath test given within a reasonable time after the accused was stopped is probative of a violation. We speculated in *Kubik* that there might in some cases be a "delay . . . so substantial as to render the test results nonprobative of the accused's impairment or breath alcohol level while driving." But we held that a breath test given "less than 1 hour" after the defendant was stopped did not entail an unreasonable delay.

*Dinslage*, 280 Neb. at 664, 789 N.W.2d at 34.

As in *Dinslage*, we hold that the 40-minute to 1-hour delay from the time of the accident to the BAC test given to Eaton in the current case was not unreasonable. Taken together with the evidence of the quantity of alcohol Eaton consumed prior to the accident in this case and his failure of the field sobriety tests, there was sufficient evidence for a rational trier of fact to conclude that Eaton was operating his vehicle with a BAC of .08 or greater as it relates to all three charges he challenges in relation to that finding.

Eaton then separately challenges that as to the State's manslaughter charge only, there was insufficient evidence to convict him of driving in a manner indicating an indifferent or wanton disregard for the safety of persons or property, but as we indicated above, the district court's instruction indicated the State need only prove Eaton drove in a manner indicating an indifference or wanton disregard for the safety of persons or property as an alternative to driving while intoxicated. Certain crimes are single crimes that can be proved under different theories. *State v. Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003). As to such crimes, when there are alternative theories of guilt presented to the jury, we will affirm the verdict if the evidence is sufficient to support any alternative theory presented. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019). The offense of manslaughter as charged by the State is such a crime. The State alleged Eaton could be convicted of manslaughter if he either unintentionally caused the death of the victim because of intoxication or by operating with indifference or wanton disregard for the safety of persons or property. Because we have already found there was sufficient evidence in the record to support Eaton's conviction for causing the death of the victim unintentionally due to intoxication, we need not consider his argument that there was insufficient evidence to support his manslaughter conviction on the basis that he drove his motor vehicle with a degree of indifference or wanton

disregard for the safety of persons or property. See *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it). Eaton's first assignment of error fails.

EXCESSIVE SENTENCES

Eaton argues the sentences imposed were an abuse of discretion. Specifically, Eaton asserts the district court abused its discretion during sentencing when the district court articulated that probation "'would depreciate the serious nature of the crime and would not be justice in the event that someone has lost their life, which is the case here.'" Brief for appellant at 21. Eaton contends that one of the elements of manslaughter is that a death occurred, yet the Legislature has classified manslaughter as a Class IIA felony, which requires neither a minimum, nor a mandatory, period of incarceration. Additionally, Eaton argues that more of the sentencing factors weighed in favor of probation.

Eaton was convicted of one count of manslaughter, a Class IIA felony, and two counts of operating a motor vehicle while under the influence with an underage passenger, Class I misdemeanors. See, §§ 28-305 and 28-1254. Eaton's sentence of 6 to 10 years' imprisonment is within the statutory sentencing range for Class IIA felonies which are punishable by a minimum of no imprisonment to a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Additionally, on each of the two Class I misdemeanor convictions, Eaton was sentenced to 0 to 90 days' jail time and his license was revoked for 1 year with an order not to drive for 45 days, then a requirement that he must apply and install an ignition interlock permit. These sentences are within the statutory sentencing ranges for Class I misdemeanors which are punishable by a minimum of no imprisonment to a maximum of not more than 1 year's imprisonment, and/or a $1,000 fine. See Neb. Rev. Stat. § 28-106 (Reissue 2016). Also, Neb. Rev. Stat. § 60-496 (Reissue 2010) authorizes the revocation of a motor vehicle operator's license for up to 1 year based on a conviction of a violation of any Nebraska law pertaining to the operation of motor vehicles.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*.

During the sentencing hearing, Eaton's counsel asked the district court to consider Eaton's risk and need levels regarding the factors in the Level of Service/Case Management Inventory (LS/CMI). At the time of the preparation of the presentence investigation report (PSR), Eaton was 53 years old, married with two dependents, and had completed the 12th grade. His only prior convictions were violating a stop/yield sign, reckless driving (amended from willful reckless driving), and speeding. The LS/CMI indicated alcohol/drug problems as medium risk. Eaton participated in a substance abuse evaluation approximately 3 months after the accident and the

evaluation noted Eaton was focused on his financial and legal problems but he was not observed to be remorseful for the accident. The evaluation also noted Eaton scored low on the readiness to change factor in that Eaton did not identify a need to modify his current drinking patterns. At the sentencing hearing, Eaton apologized for his actions and the pain he caused. Prior to handing down the sentence, the district court stated it had considered Eaton's PSR including his limited criminal history, victim impact statements, the effect this case has on the lives of the families involved, the evaluation, the seriousness of the offense, and the impact to Eaton's family. In sum, based upon the factors that the sentences imposed were within the relevant statutory sentencing range, the serious nature of the offenses, Eaton's lack of remorse, and the impact to the victim's family, the district court did not abuse its discretion in determining that probation was not appropriate and in the sentences imposed.

## CONCLUSION

For the foregoing reasons, we affirm Eaton's convictions and sentences. We further find that Eaton has failed to properly preserve his claims of ineffective assistance of trial counsel on direct appeal.

AFFIRMED.